## Commonwealth *v.* Onda, Petitioner.

406

Before STERN, C. J., STEARNE, JONES, BELL and CHIDSEY, JJ.

*Hymen Schlesinger,* for defendant, filed the petition.

*Honorable Henry X. O'Brien,* Judge of the Court of Quarter Sessions, in propria persona, filed an answer.

*James F. Malone, Jr.,* District Attorney, and *Wendell Freeland* and *George H. Ross,* Assistant District Attorneys, filed an answer for the District Attorney.

OPINION AND ORDER OF THE COURT BY MR. CHIEF JUSTICE HORACE STERN, February 24, 1954:

Defendant, Andrew Onda, who was convicted in the Court of Oyer and Terminer of Allegheny County of violation of the State Sedition Act of 1919, re-enacted as part of The Penal Code of 1939 (Act of June 24, 1939, P. L. 872, §207), petitioned this court for a rule on the Commonwealth to show cause why his sentencing should not be deferred for a period of four months pending his treatment for a serious heart condition in the hospital of the Rockefeller Institute for Medical Research in New York. A temporary stay having been granted in order to afford opportunity for consideration of the petition by the members of the court eligible

to participate therein, the court, as the result of such consideration, granted a rule on the trial Judge in the court below and the District Attorney to show cause why the sentencing of the petitioner should not be stayed pending his discharge from the hospital or until final disposition of the case of *Commonwealth v. Nelson,* 377 Pa. 58, 104 A. 2d 133, should the Supreme Court of the United States grant review thereof. Answers have now been filed to said rule.

Because of manifest misconceptions entertained by the respondents to the rule it seems necessary to point out (1) the existence of the power exercised by this court; (2) the method employed in its exercise; (3) why it should be exercised in the present case.

(1) The existence of the power:

More than two centuries ago section XIII of the Act creating the Supreme Court of this Commonwealth (Act of May 22, 1722, 1 Sm. L. 131) provided that the court should "minister justice to all persons, and exercise the jurisdictions and powers hereby granted concerning all and singular the premises according to law, as fully and amply, to all intents and purposes whatsoever, as the Justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster, or any of them, may or can do." Thus the power of superintendency over inferior tribunals became vested in this court from the very time of its creation: *Commonwealth v. Ickhoff,* 33 Pa. 80, 81; *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 99, 61 A. 2d 426, 428, 429. What were the "jurisdictions and powers" of the Justices of the Court of King's Bench thus conferred upon the Supreme Court? It is said in Blackstone, Book 3, ch. 4 §42, that "The jurisdiction of this court [Court of King's Bench] is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either

remove their proceedings to be determined here, *or prohibit their progress below.* . . . It protects the liberty of the subject, *by speedy and summary interposition."* Subsequent legislative enactments did not derogate from the powers granted to the Supreme Court by the 1722 Act but rather confirmed and enlarged them: *Rymer's Contested Election,* 316 Pa. 342, 346, 175 A. 544, 545. Thus the Act of June 16, 1836, P. L. 784, Section 1, provided that "The Supreme court of this commonwealth shall have power to hear and determine all, and all manner of pleas, plaints, and causes which shall be brought, or removed there from any other court of this commonwealth, by virtue of any writ of process issued by the said court, or any judge thereof, for that purpose, in the manner now practised and allowed, to examine and correct all, and all manner of errors of the . . . courts of this commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and thereupon, to reverse, modify or affirm such judgments and decrees, or proceedings, as the law doth or shall direct; and generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the constitution and laws of this commonwealth; . . .".

In *Commonwealth v. Balph,* 111 Pa. 365, 375, 377, it was said: "It will be observed that the Act of 1722 expressly confers upon this court the powers of the King's Bench in criminal cases. This is plain from the language of the act itself, and authority is scarcely needed for so plain a proposition. . . . It [the King's Bench] possesses the inherent power of removing by certiorari the record and proceedings of any criminal case from the inferior court *at any stage of the proceedings."*

The Constitution of 1874 made no change in the broad powers of the Supreme Court as thus stated: *Carbon County Judicial Vacancy*, 292 Pa. 300, 302, 141 A. 249, 250; *Commonwealth v. Reilly*, 324 Pa. 558, 573, 188 A. 574, 581; *Apex Hosiery Co. v. Philadelphia County*, 331 Pa. 177, 178, 200 A. 598; *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 100, 61 A. 2d 426, 429.

In *Gosline v. Place*, 32 Pa. 520, 523, quoted in *Schmuck v. Hartman*, 222 Pa. 190, 194, 70 A. 1091, 1092, it was said: "The judicial authority of this court extends to the review and correction of all proceedings of all inferior courts, except where such review is expressly excluded by statute, in accordance with the constitution; and we may issue all sorts of process, and use and adopt all sorts of legal forms that are necessary to give effect to this supervisory authority."

It would be a mere work of supererogation to point to the many instances in which this court has exercised the power thus conferred upon it. Merely as one example, in *Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454, where a defendant was convicted by the jury of murder in the first degree with recommendation of life imprisonment, this court, before sentence could be imposed, set the verdict aside on the ground that an inquiry into the defendant's sanity should have been preliminarily ordered. This action of the court was not in pursuance of its appellate jurisdiction because there was no entry of judgment on the verdict by the court below and therefore no judgment from which an appeal could have been taken. But the court, after calling attention to its powers of the King's Bench, said (pp. 127, 128, A. p. 460) that since, under the Acts of 1722 and 1836, it could "minister justice to all persons," it could thus protect the rights of the defendant "by speedy and summary interposition." And in

*Commonwealth ex rel. Smith v. Ashe,* 364 Pa. 93, 119, 71 A. 2d 107, 120, the court said that if the Supreme Court of Pennsylvania should declare itself powerless to act in such a case "it would thereby declare itself unwilling to administer the trust imposed on it by the organic law." Indeed the power thus invoked is especially to be employed where a remedy by appeal would be unavailable: *First Congressional District Election,* 295 Pa. 1, 13, 14, 144 A. 735, 739, 740. Any final appeal by the defendant from the judgment of sentence, if and when imposed by the court below, will lie of course, to the Superior Court under the statute, which court, however, is not vested with the power here exercised.

So much as to the challenged authority of the Supreme Court to defer the sentencing of the defendant by the court below.

(2) The method of exercise of the power:

Complaint is made by the District Attorney that our action in issuing a staying order, made "without notice and hearing," was an "unprecedented interference with the processes of justice in the county." As a matter of fact, apart from a purely administrative temporary stay by the Chief Justice until the court could assemble and consider the merits of defendant's petition, the court has not granted any stay "without notice and hearing." The only action taken by it after consideration of defendant's petition was to enter the present rule to show cause *why* the stay prayed for should not be granted, the very purpose of which rule is to afford to the Commonwealth the opportunity to present to this court such facts and reasons as it may wish to show why the sentencing should *not* be stayed; in other words, the court is entering upon an inquiry as to defendant's justification in requesting the stay in order to determine in the present proceedings wheth-

412

er the stay prayed for *should* be granted. It is obvious, therefore, that the charge that there has been any arbitrary interference with the processes of justice in the court below, "without notice and hearing," is wholly without merit.

(3) Why the power should be exercised in the present case:

The reason for instituting the present inquiry by issuing the rule in question was based not only upon the certificates of two physicians to the effect that defendant's heart condition was such that should he report for sentencing in the court below at the present time he would incur a grave risk of an attack possibly fatal in its consequences, but also upon the report of the physician engaged by the District Attorney to the effect that defendant has a serious organic heart disease and that the outlook as to length of life is poor; while he added that a journey to Pittsburgh would not probably constitute any additional undue risk, he did not pass upon the question of the likely danger to one with the admittedly serious heart condition of this defendant that would arise from the emotional shock of being sentenced in court to the term in prison to which defendant would undoubtedly have been subject. Defendant's petition alleged that physicians appointed by the United States District Court for the Western District of Pennsylvania advised that court that defendant's condition would not permit him to withstand the strain of a trial, as the result of which his case was severed from that of his co-defendants, and it was for that reason that he has not been brought to trial for alleged violation of the federal Smith Act. The petition further pointed out that although defendant was convicted in August, 1951, he was not called for sentence in the court below until November, 1953, although he was at all times available for sentence dur-

ing that intervening period of more than two years, but in September, 1953, he suffered a stroke due either to an embolism or a coronary thrombosis and it appears that he is at present a patient in the Hospital of the Rockefeller Institute for Medical Research in New York. Under such circumstances defendant should be at least entitled to prove the allegations in support of his petition by the testimony of the competent authorities of the Rockefeller Institute Hospital as to whether it is true that he would be in grave danger of a fatal heart attack should imposition of sentence upon him be insisted upon prior to his discharge from that institution. This Court would not deny to any person, whoever he be, the protection of so elemental a right.

### ORDER

Petitioner may, not later than fifteen days from the filing hereof, take depositions in support of the allegations of his petition, subject, of course, to notice to be given to the Commonwealth and its right to cross-examine the deponents, with the further right on the part of the Commonwealth thereupon to take counter-depositions. On the basis of the testimony thus presented and briefs, if any, submitted this Court will make disposition of the rule to show cause, no oral argument being required for that purpose.

Mr. Justice MUSMANNO and Mr. Justice ARNOLD took no part in the consideration of defendant's petition.