Esbenshade et al., Appellants, *v.* Department of Public Instruction.

Argued March 26, 1956.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Robert H. Maurer,* with him *Theodore L. Brubaker,* Solicitor, School District of Lancaster, and *McNees, Wallace & Nurick,* for appellants.

*Harry L. Rossi,* Deputy Attorney General, with him *Elmer T. Bolla,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY ERVIN, J., July 17, 1956:

This appeal is concerned with the refusal of the State Council of Education to approve the extension of the boundaries of the School District of the City of Lancaster by the annexation of a separate parcel of land located in Manheim Township, Lancaster County, which had been annexed by ordinance of the City of Lancaster. In this particular case we are concerned with the Esbenshade tract of approximately 127 acres, with an assessed valuation of $37,000.00, from which nine children presently attend the Manheim Township schools. This tract of ground is basically commercial and industrial. In the brief of the Manheim Township School District presented to the State Council it is stated: "Since the City's annexation of this land over a year ago, Mr. Esbenshade has sold 32 of his 127 Acres to Aluminum Company of America, for an industrial plant, and has granted an option for 31 Acres more for another still unidentified industry, thus definitely removing 63 of the 127 Acres from any future possibility of contributing school children." This tract is one of 48 separate tracts which the City of Lancaster over the past seven years has annexed or attempted to annex. In 1947 the City took from the township the main Armstrong Cork Company plant and several smaller properties, with an aggregate assessment of $3,476,500.00, and under the law in force at that time this annexation automatically changed the

school district lines and enriched Lancaster City School District and impoverished Manheim Township School District accordingly. The annexed land was entirely industrial, without residents or school children, and therefore the annexation left the township school district with as many pupils to educate as before on only 71 per cent of its former tax base of assessed value. Neither the State Council of Education nor any other tribunal had any power at that time to review the propriety of, or to restrain, the annexation so far as the school district boundaries were concerned, since Manheim Township School District was and is a third-class school district, and the State Council's jurisdiction over annexations extended only to fourth-class districts.

We believe that because of this hardship and similar ones throughout the state, the legislature passed the Act of 1949, P. L. 1089, 24 PS §§2-227, 228, amending §§227 and 228 of the School Code so as to give the State Council the power which it now has to determine whether annexations for general municipal purposes affording better police and fire protection and water, sewer and garbage services, etc., should also be allowed to change third-class school district boundaries.

These amendments are as follows: "Section 227. . . . Whenever . . . an existing school district of the *third or* fourth class is affected by the annexation to a city . . . *of* territory included within a school district of the *third or* fourth class, the clerk of the courts or other proper officer shall, within ten days thereafter, make a certified copy . . . of the decree of the court . . . affecting such annexation, and mail the same to the Superintendent of Public Instruction, Department of Public Instruction, Harrisburg, Pennsylvania.

"Section 228. . . . (a) If . . . the part of a school district remaining after the separation would consti-

tute a school district of the *third or* fourth class, the receipt of said certified copy shall be deemed an application for the . . . change in the boundaries of an' existing school district of the *third or* fourth class, and the Superintendent of Public Instruction shall, within sixty days thereafter, cause the State Council of Education to be convened. The council shall thereupon consider such application and determine whether such . . . change in the boundaries of an existing school district of the *third or* fourth class, is desirable, and whether the welfare of the pupils within the territory affected thereby will be promoted by the . . . change in the boundaries of such existing district.

"(b) If the council shall approve such application, it shall certify its findings and its approval of such . . . change in such existing district thereon, and transmit a certified copy thereof to the clerk of the courts or other proper officer from whom the application was received, who shall file the same in such original proceedings, whereupon . . . the school district of the *third or* fourth class remaining after such annexation shall constitute a separate school district as so changed.

"(c) If, in the judgment of the council, the application should not be granted, it shall endorse thereon 'not approved,' and transmit a certified copy thereof to the clerk of the courts or other proper officer from whom the application was received, who shall file the same in the original proceedings. In such event, the boundaries of the existing school districts shall remain unchanged: Provided, The State Council of Education may, for cause shown, upon subsequent application by ten taxables of a school district of the *third or* fourth class not coterminous with a city, borough, incorporated town, or township, vacate such refusal, and may approve the creation of such new district of the *third*

*or* fourth class or change in boundaries of an existing district of the *third or* fourth class, and thereupon the same proceedings shall be had as herein provided upon the original application and with like effect."

The State Council of Education was convened in accordance with the above provisions and the record shows that it had before it briefs submitted by the solicitors of the two school districts involved, the report of the findings of the field investigation made by R. W. Robinson, a member of the staff of the Department of Public Instruction, and a statement of position of the Lancaster County Board of School Directors in which it stated that a resolution had been unanimously passed by that board opposing the annexation for school purposes. This statement of position is printed in full in a footnote.[1] After several meetings of the council it

---

[1] "A Statement of Position of the Lancaster County Board of School Directors on the Proposed Annexation of a Part of the Manheim Township School District to the Lancaster City School District which was Passed Unanimously at the October 13, 1953, Meeting of the Board.

"The Lancaster County Board of School Directors filed statements in opposition to the changing of the boundaries of the Manheim Township School District on two previous occasions under dates of April 12, 1950, and August 14, 1952. It desires to express itself in a similar manner, and for essentially the same reasons, on the applications for annexation of the portions of the Manheim Township School District to the City of Lancaster School District which were referred to in the letter received from the State Council of Education, dated August 26, 1953, and addressed to Mr. Roy H. Miller, Secretary, Lancaster County Board of School Directors, 51 North Hazel Street, Manheim, Pennsylvania.

"The Lancaster County Board of School Directors views with alarm and serious concern the changing of the boundaries of any school districts in Lancaster County except as the school districts involved are included in the plan for the consolidation of school districts which was submitted by the County Superintendent of Schools, Doctor Arthur P. Mylin, for the County Board, to the Department of Public Instruction; or, are parts of a joint or union

disapproved of the annexation for school purposes and transmitted a certified copy of the endorsement to the

school district, or, where the annexation to a given school district is accompanied by commensurate obligations in terms of pupils to be educated. It opposes, without any reservations, the annexation of industrial areas which produce few, if any, children, and relieves the one district of no burdens while at the same time it adds no burdens to the other school district.

"This Board, therefore, believes that the annexations mentioned previously are undesirable and will not promote the welfare of the pupils in the Manheim Township School District. It is convinced, as it views the nature of these annexations to date and as they affect the Manheim Township School District, that the only concern of the Lancaster City School District is the obtaining of more tax revenue without any regard of what becomes of the remnant of the Manheim Township School District. This pattern of annexation, pursued only by a few industrialists, completely ignores the people. To this extent, it is manifestly unfair as well as undemocratic.

"The increase in population of Manheim Township is indicative of the fact that it is one of our fastest growing school districts. In 1940, the population was 7,610; in 1950, 9,273; and in 1953, by special enumeration, 10,700. The increase in school population is also particularly noteworthy. In the ten year period, 1944-45—1953-54, the number of pupils increased from 1,442 to 2,235. In this same period of time, Lancaster City has had little, or no, increase in its school population. The records in the Department of Public Instruction will substantiate this statement.

"It is obvious that this rapid growth in Manheim Township will necessitate a building program in the immediate future—before the end of this school year—in excess of one and one half million dollars. These plans will require a sound tax structure based on unchanging school district boundaries and on an ever increasing, rather than a decreasing, assessed valuation.

"If these annexations are approved, the gain in taxable assessment for school purposes in Lancaster City will be slightly more than one per cent of its present total assessment for school tax purposes. This could result in a tax rate reduction for the city of approximately .225 mills. Likewise, if these annexations are approved, the loss in taxable assessment for school tax purposes in Manheim Township will be more than thirteen per cent of its

clerk of the courts for filing with the original proceedings for annexation. Thereafter an appeal was filed by Elmer L. Esbenshade and the School District of the City of Lancaster in the Court of Common Pleas of Dauphin County and exceptions to the adjudication and order of the State Council of Education were likewise filed in said court attacking the constitutionality of the 1949 Acts "under which the State Council of Education is constituted and under which authority it acted in the aforesaid adjudication. . . ." Thereafter the Dauphin County Court issued its writ of certiorari to the Department of Public Instruction, State Council of Education, commanding it to certify the entire record to the Court of Common Pleas of Dauphin County. Thereafter the record was so certified and the lower court filed an opinion, together with the following order: "And now, November 14, 1955, the appeal of Elmer L. Esbenshade and The School District of the City of Lancaster, Lancaster County, Pennsylvania is denied." This denial or dismissal of the appeal by the lower court was predicated upon the conclusion of that court that it did not have jurisdiction of the subject matter. This appeal was then taken.

The important question which we first meet is whether the lower court had the right to consider this matter at all. We are of the opinion that it did not possess this power.

Appellants argue that judicial review may be had under the "Administrative Agency Law." Act of 1945,

---

present total assessment for school tax purposes. This could result in a tax rate increase of 4½ mills for the township.

"It is apparent that any loss in assessment will directly affect the township's ability to provide the high quality of educational opportunities which it has supplied in the past. Accordingly, the Lancaster County Board of School Directors unanimously oppose these annexations."

June 4, P. L. 1388, 71 PS §§1710.1 to 1710.51. Section 41 gives the right to appeal to the Court of Common Pleas of Dauphin County "within thirty days after the service of an adjudication." Section 2, as amended, defines "adjudication" as follows: " 'Adjudication' means any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding. . . ." The real party in interest in the proceeding is Elmer L. Esbenshade, the owner of the land involved in the annexation proceedings. No "personal or property rights, privileges, immunities or obligations" of Elmer L. Esbenshade are adjudicated by the action of the State Council of Education disapproving the annexation of the school territory. We do not understand how the School District of Lancaster, Pennsylvania, became a party in these proceedings. They were not petitioners in the petition filed with the City Council asking for annexation. They were not a school district of the "third or fourth class" whose boundaries were being changed. Sections 227, 228 of the School Code, as amended, supra. True it is that the State Council of Education permitted the courtesy to the solicitor of the School District of Lancaster of filing a brief. This we do not believe the council was under any legal obligation to do any more than to hold hearings and permit the production of witnesses. *Weaverland Independent School District Case,* 378 Pa. 449, 455, 456, 106 A. 2d 812.[1]

In this connection we quote with approval what our brother judge, J. COLVIN WRIGHT, so well said when

---

[1] Now, however, the council must fix a time and place for hearing and give notice to the affected school districts. Act 1956, Feb. 17, P. L.     , No. 340 Sec. 1, 24 P.S. Supp. §2-228.

specially presiding in the Common Pleas Court of Dauphin County in *Susquehanna Twp. School Dist. v. Dept. of Public Instr.,* 62 Dauph. 125, 127: "We are of the opinion that the State Council of Education is a non-judicial agency such as is the State Tax Equalization Board, the orders of which may not be reviewed directly by the Supreme Court: Newport Township School District v. State Tax Equalization Board, 366 Pa. 603, nor by the Court of Common Pleas: Glen Alden Coal Co. v. State Tax Equalization Board, 367 Pa. 63. Performance by the State Council of Education of the mandate set forth in the quoted language is not an adjudication within the meaning of the Administrative Agency Law. On the contrary, it is a direction as to when legislative power shall become operative: Baldwin Township's Annexation, 305 Pa. 490. The State Council of Education has exclusive authority to decide the question of the propriety of the annexation for school purposes, and only it can determine the ultimate effect of the annexation upon the school districts concerned: Irwin Borough Annexation Case No. 2, 165 Pa. Super. Court 134."

An examination of the School Code will reveal that no right of appeal from the action of the State Council was given in this type of matter, although in many other matters it is expressly given. The argument is well founded that the legislature never intended and certainly did not give the right to appeal in this type of matter.

We therefore conclude that the appellants did not find their way to the lower court because of any act of the legislature giving them such right.

The lower court, after the appeal was filed, actually issued a writ of certiorari to the council, although it later decided it had no power to issue such writ in

this case. Clearly the lower court had no power to issue this writ.

We repeat what was so well said on this subject by President Judge Rice in *Nobles v. Piollet*, 16 Pa. Superior Ct. 386, 388, 389, 390: "In the absence of such legislation, the power of that court to issue a certiorari to bring up the proceedings must be found in the constitution or be held not to exist. The Supreme Court has all the revisory powers of the king's bench over inferior jurisdictions which have not been taken away by express words or necessary implication, but the common pleas has only such of those powers as have been expressly conferred. The constitution of 1790 provided that the judges of that court within their respective counties, should have 'the like powers with the judges of the Supreme Court, to issue writs of certiorari to the justices of the peace and to cause their proceedings to be brought before them, and the like right and justice to be done.' This provision was retained unchanged by the constitutional convention of 1838. But the constitution of 1874 directed that in Philadelphia there should be established for each thirty thousand inhabitants 'one court, not of record, of police and civil causes.' There was, therefore, occasion, if not absolute necessity, for a change in the section relating to the power of the common pleas to issue certiorari, by inserting after the words, 'justices of the peace,' the words, 'and other inferior courts not of record.' The rule noscitur a sociis is based on common sense. It is often an aid in the construction of words of doubtful meaning and may be considered in the construction of a written constitution as well as of a statute. It may properly be considered here. Bearing in mind also the occasion for a change in the fundamental law, we think it safe to assume that the framers of the constitution

had in contemplation the courts not of record directed to be established in Philadelphia and similar inferior courts not of record that might be established under the power reserved to the legislature in the first section of the judiciary article. In the popular sense of the term a board of road commissioners no more than a board of school directors, or a borough or city council, although invested with powers requiring the exercise of a sound legal discretion, is a court. Nor, so far as the reported cases show, was it the practice in Pennsylvania to review their proceedings upon certiorari. If the framers of the constitution of 1874 had intended to extend the jurisdiction of the judges of the common pleas so as to authorize them to bring before them by certiorari the proceedings of all such bodies or tribunals involving the exercise of discretionary powers affecting individual members of the community directly or indirectly, we think they would have expressed that intention in plain terms, and would not have left it to doubtful inference. It is to be observed further that we are dealing with a constitutional provision conferring a revisory power or jurisdiction upon the common pleas, not with one restrictive of the power of the legislature to enlarge that jurisdiction if in their judgment it be deemed wise to do so. There is, therefore, no occasion or justification for putting a forced construction upon the words, 'other inferior courts not of record,' which, there is every reason to believe, neither the framers of the constitution nor the people in adopting it intended them to have. Upon this question we are in accord with the learned judge especially presiding at the hearing of the case."

In *Com. v. Onda,* 376 Pa. 405, 411, 103 A. 2d 90, a case involving the right of the Supreme Court to issue a writ of certiorari to a quarter sessions court in a

criminal matter, Chief Justice STERN said: "Any final appeal by the defendant from the judgment of sentence, if and when imposed by the court below, will lie of course, to the Superior Court under the statute, *which court, however, is not vested with the power here exercised.*" (Emphasis added)

Even the majority opinion in *Delaware County Nat. Bank v. Campbell,* 378 Pa. 311, 316, 106 A. 2d 416, recognizes the fact that only the Supreme Court of this State possesses the right to issue a writ of certiorari, unless the right be expressly given by the legislature to take an appeal or issue such writ, as stated in the following language: "This case arose on a certiorari and possessing as we do, and other courts of the Commonwealth do not, the powers of King's Bench, it was properly brought direct to this Court: Commonwealth v. Onda, 376 Pa. 405, 103 A. 2d 90; cf. also Nobles v. Piollet, 16 Pa. Superior Ct. 386; Morrison, Sec. of Com. v. Philadelphia College of Law, Inc., 56 Dauphin 265."

Even the Supreme Court does not have the power to review directly by certiorari the findings or actions of a non-judicial administrative board where such judgment or proceeding is not judicial in its nature. *Newport Twp. Sch. Dis. v. State Tax Eq. Bd.,* 366 Pa. 603, 609, 79 A. 2d 641. In that unanimous opinion of the Supreme Court it is further stated: "If they are either legislative or executive, they are beyond the reach of this writ."

We are, therefore, of the opinion that the lower court did not have the power to issue the writ of certiorari to the State Council of Education in this case.

While it is not necessary for us to determine whether the Supreme Court of this Commonwealth would have the power to issue a writ of certiorari in this case,

we may say by way of obiter dictum that we seriously doubt that it could do so. As Mr. Justice LADNER so well said in *Newport Twp. Sch. Dis. v. State Tax Eq. Bd.*, supra, " '. . . there is room for great difference of opinion as to whether they [the acts of an administrative tribunal] are judicial or not.' " We are firmly of the opinion that in this case the function of the council was non-judicial. It was determining a fact which in turn would be determinative of the question of whether or not the annexation should become operative as to the school districts involved. If it determined that the welfare of the pupils within the territory affected would be promoted, then it should approve the annexation. If it determined otherwise, it should not approve the annexation. The legislature wisely placed this power in the State Council of Education, probably because it believed this body to be better able to determine this question than the court would be. At any rate, the council merely performed the function of determining this fact. If it determined it one way, the legislative will effecting annexation for school purposes became operative. If it determined it another way, it did not become operative. As stated above, however, all of this is obiter dictum because the Supreme Court did not issue the writ of certiorari in this case.

Because of our disposition of the case it will be unnecessary for us to consider the other question raised on this appeal.

We add, however, that we have carefully examined the briefs of counsel for the School Districts of the City of Lancaster and the Township of Manheim as well as the reports or statements of the Lancaster County Board of School Directors and R. W. Robinson, a member of the staff of the Department of Public Instruction, all of which were filed with the State

Council of Education, and we are of the opinion that the matter was correctly disposed of on the merits by the State Council.

The order of the lower court denying or dismissing the appeal is affirmed at the cost of the appellants.