## Alberts v. Bradley

*Harry Alan Sherman* and *Merle A. Wolfson*, for petitioner.

*Edward C. Boyle*, District Attorney, and *William C. Smith*, Assistant District Attorney, for respondent.

WEISS, J., August 27, 1956.—On August 17, 1956, the District Attorney of Allegheny County filed information before Frederick H. Bradley, a duly elected Magistrate of McKeesport charging plaintiff, Fred B. Alberts, with extortion and other crimes. On the afternoon of August 17, 1956, plaintiff, through his counsel, Harry Alan Sherman, Esq., came to the home of this court in Glassport, and following a lengthy argument, assured this court that he "had absolute proof" that Magistrate Fred Bradley said Fred Alberts was guilty,

even before the hearing. Plaintiff asked this court for a "rule to show cause why a writ of prohibition should not issue" to prevent Magistrate Bradley from presiding, requesting that the information be filed before any other justice of the peace in the County of Allegheny. Attorney Harry Alan Sherman assured this court there was ample authority for such action and he agreed to furnish a brief supporting his position. In addition, he wanted no delay and *made the rule returnable at the discretion of the district attorney.* Recognizing that the constitutional rights of Mr. Alberts were involved, this court signed the order "granting the rule." The district attorney filed his answer. The matter came on for hearing before this court on Tuesday, August 21, four days following the issuance of the writ; the normal period in all such cases in this county is approximately 60 to 90 days.

The sole issue or question involved before this court is: Does the court of Common Pleas have jurisdiction to issue writs of prohibition directed to aldermen, magistrates and justices of the peace in criminal matters?

### Discussion

Neither the district attorney nor counsel for plaintiff could furnish this court with any legal precedent in an identical proceeding of this character. The district attorney in his brief assumes an entirely different legal position than he did at the argument before the court on Tuesday, August 21, i.e., challenging the right of the common pleas court to issue writs of prohibition in criminal proceedings.

To determine whether or not the courts of common pleas have jurisdiction over justice of the peace and aldermen and may issue writs of prohibition directed to such members of the minor judiciary, we must resort to the Act of May 22, 1722, 1 Sm. L. 131 which established the original jurisdiction of the Supreme

Court of Pennsylvania and courts of common pleas. Jurisdiction is set forth therein as follows:

"XI. And be it further enacted, That there shall be holden and kept at Philadelphia, a Court of Record twice in every year: that is to say, on the twenty-fourth day of September and the tenth day of April, if the same days, or either, do not happen to be the first day of the week, and in such case the said court shall be held on the next day following; which said court shall be called and styled, The Supreme Court of Pennsylvania. And that there shall be three persons of known integrity and ability, commissionated by the Governor, or his Lieutenant for the time being, by several distinct patents or commissions, under the great seal of this province, to be Judges of the said court, one of whom shall be distinguished in his commission by the name of Chief Justice. And every of the said Justices shall have full power and authority, by virtue of this act, when and as often as there may be occasion, to issue forth writs of habeas corpus, certiorari, and writs of error, and all remedial and other writs and process, returnable to the said court, and grantable by the said Judges by virtue of their office, in pursuance of the powers and authorities hereby given them. . . .

"XIII. And that the said Judges, or any two of them, shall have full power to hold the said court, and therein to hear and determine all causes, matters and things, cognizable in the said court, and also to hear and determine all and all manner of pleas, plaints and causes, which shall be removed or brought there from the respective General Quarter Sessions of the Peace, and Courts of Common Pleas, to be held for the respective counties of Philadelphia, Chester and Bucks, as also for the city of Philadelphia, or from any other court of this province, by virtue of any of the said writs; and to examine and correct all and all

manner of errors of the Justices and Magistrates of this province, in their judgments, process and proceedings in the said courts, as well in all pleas of the crown, as in all pleas real, personal and mixed; and thereupon to reverse or affirm the said judgments, as the law doth or shall direct; *And also to examine, correct and punish the contempts, omissions and neglects, favours, corruptions and defaults, of all or any of the Justices of the Peace, Sheriffs, Coroners, Clerks and other officers, within the said respective counties.* And also shall award process for levying, as well of such fines, forfeitures and amerciaments, as shall be estreated into the said Supreme Court, as of the fines, forfeitures, and amerciaments, which shall be lost, taxed and set there, and not paid to the uses they are or shall be appropriated. *And generally shall minister justice to all persons, and exercise the jurisdictions and powers hereby granted concerning all and singular the premises according to law, as fully and amply, to all intents and purposes whatsoever, as the Justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster, or any of them, may or can do.* Saving to all and every person and persons, his, her or their heirs, executors and administrators, their right of appeal from the final sentence, judgment or decree of any court within this province, to his Majesty in Council, or to such court or courts, Judge or Judges, as by our sovereign lord the King, his heirs or successors, shall be appointed in Britain, to receive, hear and judge of appeals from his Majesty's Plantations. . . .

"XXI. And be it further enacted, That a competent number of persons shall be commissionated by the Governor, or his Lieutenant, under the broad seal of this province, who shall hold and keep a Court of Record in every county, which shall be styled and called, *The County Court of Common Pleas,* and shall be

holden four times in every year, at the places where the General Quarter Sessions shall be respectively kept, viz. At Philadelphia, for the county and city of Philadelphia, on the day called the first Wednesday after the day appointed for the Quarter Sessions to begin on there, in the months called March, June, September and December: At Bristol, for the county of Bucks, on the eleventh day following, inclusive: And at Chester, for the county of Chester, on the day called the last Tuesday in the months called May, August, November, and February. *Which said Justices, or any three of them, according to the tenor and direction of their commissions, shall hold pleas of assizes, scire facias, replevins, and hear and determine all and all manner of pleas, actions, suits and causes, civil, personal, real and mixed, according to the laws and constitutions of this province.*" (Italics supplied.)

With the various legislative enactments through the years, the Act of June 16, 1836, and other more recent amendments correspond to the wording of the Act of 1722, XXI, setting forth the jurisdiction of the courts of common pleas, and nowhere does the Act of June 16, 1836, P. L. 784 (or the Act of 1722) encompass the authority to supervise justices of the peace and equivalent members of the minor judiciary, nor to issue writs of prohibition directed against them. The sole authority under our early law to issue writs of prohibition was vested in the Supreme Court as it was in the Kings Bench at common law. In the case of Carpentertown Coal & Coke Co. v. Laird, 360 Pa. 94, the court recognizes the power of the common pleas courts to issue writs of prohibition over quasi-judicial tribunals *under* its jurisdiction, but *nowhere* in our Constitution or statutes is the minor judiciary considered a judicial agency subject to the jurisdiction of our common pleas court.

It must be remembered, as Mr. Justice Horace Stern so aptly said in the Carpentertown case, supra:

"The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if *none* of the ordinary remedies provided by law is applicable or adequate, to afford relief. (Italics supplied) . . . It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction or otherwise."

This brings us then to the question whether, under the circumstances of the present case, a writ of prohibition should issue. This court believes upon the present state of the record and under existing law that it should not.

To fortify this conclusion we quote from Mr. Chief Justice Kephart in the case of McNairs Petition, 324 Pa. 48, in which he said, at page 55:

"Neither courts of common pleas nor quarter sessions can directly supervise magistrates in the exercise of their powers. . . . Nor do they have the power of direct regulation or control over them. Thus in Bowman's Case, supra [225 Pa. 364], where the Act of 1907, authorizing the Courts of Common Pleas to remove Justices of the Peace for cause, was declared unconstitutional, the court stated 'Under all our constitutions a justice of the peace has been a constitutional officer, and by the eleventh section of the judiciary article of the present one, he is a judicial officer. The appellant was as much a Judge, though in a limited sphere, as the judicial officer by whose decree the appellees would have him removed from office.'"

For further references of support see Commonwealth v. Homka, 1 D. & C. 2d 685, 693, and Commonwealth v. Onda, 376 Pa. 405, 408.

This court wishes to make it crystal clear that while lacking the authority to issue the writ, it will never shirk its responsibility in granting to every person, whether he be charged with murder or mild assault, the right to every protection of due law, under the "due process" clause of our Constitution and that means to exhaust every judicial process no matter how time consuming. We grant this constitutional right to murderers who take human life, and such an illustration is the case of Commonwealth v. Cleveland Thompson, where defendant was found guilty of first degree murder with the death penalty before this very court. Although there were 15 reprieves by the Governor and hundreds of writs in various courts filed by defendant, not a single word of criticism was expressed by the press of this community. The same applies to the Communist trials which involved years of delay in appeals and arguments before the courts and thousands of dollars expense to the taxpayers, and there was not a whimper of criticism by the press of this community. Yet, in the *Alberts* case the inference has been clearly expounded *that this court should disqualify itself because of interest or bias in favor of defendant.* Through a long career in public office this court has enjoyed the confidence of the people in the State legislature, in the United States Congress, on the sports field of America and in the court room, and my integrity has never been questioned. . . .

In the case of Snyder v. Massachusetts, 291 U. S. 97, 108, 122, the Supreme Court of the United States said:

". . . fundamental justice [is] assured to him [defendant] by the Constitution of the United States. . . . But justice, though due to the accused, is due to the

accuser also. The concept of fairness must not be strained till it is narrowed. We (the courts) are to keep the balance true."

This court shall always keep foremost in its judicial task these fundamental concepts, and it would rather nine guilty men go free than one innocent man suffer a jail penalty. It is not a mockery or travesty of justice to grant to every defendant the right to exhaust every legal remedy under the "due process" clause of our Constitution. It would be a mockery and travesty to deny one these fundamental rights.

If, as the Commonwealth contends, defendant is guilty of the offense charged, he has a right to "jury trial", and if he is found guilty, he should be responsible and answerable to society. If he maintains bias and prejudice by the magistrate, he has adequate remedy at law to protect his rights before the presiding judge of the court of quarter sessions. This is "fundamental Constitutional due process" and as Justice Cardozo, one of our greatest United States Supreme Court Justices once said (Roberts v. New York City, 295 U. S. 264, 278) :

"Due process is a growth too sturdy to succumb to the infection of the least ingredient of error."

The rule is discharged.

### Order

And now, to wit, this August 27, 1956, the within matter having come before the court on a rule to show cause why a writ of prohibition should not issue. After oral argument and consideration of the briefs submitted on behalf of the parties, it is ordered, judged and decreed that the rule be and hereby is discharged.

Eo die exception noted to plaintiff Fred B. Alberts and bill sealed.