507 A.2d 79

In the Matter of COMMONWEALTH of Pennsylvania
v.
Salvatore CHIMENTI.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1986.

Decided March 27, 1986.

Michael Mustakoff, Philadelphia, for Chimenti.

Eric B. Henson, Deputy Dist. Atty., Robert B. Lawler, Chief/Appeals Div., Gaele M. Barthold, Chief/Prosecution Appeals, Harriet R. Brumberg, Philadelphia, Andrew S. Gordon, Sr. Deputy Atty. Gen., Thomas G. Saylor, Harrisburg, for Commonwealth.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

In this case we are confronted with a unique factual situation. The defendant involved is Salvatore Chimenti. He was convicted by a jury of first degree murder after a trial presided over by the Honorable Lisa A. Richette of the Court of Common Pleas of Philadelphia. Subsequently, Mr. Chimenti dismissed his trial counsel, and hired new counsel to pursue his post-trial motions. These motions were de-

nied by Judge Richette. Prior to this denial however, Mr. Chimenti dismissed his post-trial counsel and retained his present appellate counsel.

Appellate counsel, acting pursuant to information given him by the defendant, as well as information garnered from his own investigation, contacted the Philadelphia District Attorney's Office with information concerning alleged irregularities in Mr. Chimenti's trial. These allegations included claims that Mr. Chimenti's trial counsel acted contrary to his best interests by suborning perjury from certain witnesses. The district attorney was intrigued by these allegations and was convinced that they had merit, so much so that Mr. Chimenti's counsel was able to strike a deal with the Commonwealth which would vacate the first degree murder conviction in return for Mr. Chimenti's cooperation in a police investigation and prosecution. The terms of the deal were incorporated into a petition, the import of which provided:

1. Chimenti has appealed from judgment of sentence for first degree murder.

2. The Commonwealth and Chimenti have agreed that his sentence should be vacated in exchange for his entry of a negotiated guilty plea to murder generally, certified to rise no higher than third degree.

3. To effectuate this agreement the case must be remanded to the Court of Common Pleas for special assignment to a judge who, after sentence has been vacated, will accept Chimenti's negotiated guilty plea.

This petition was presented to the Honorable Edmund B. Spaeth, Jr., then President Judge of the Superior Court, who, acting singularly and *in camera*, entered an order which granted the parties' petition. The order in question was entered on April 18, 1985,[1] and provided in relevant part that:

This case is remanded to the President Judge of the Court of Common Pleas of Philadelphia for special assignment to a judge who shall, on application of the parties vacate appellant's sentence and, in accordance with Pa.R.Crim.P. 319, accept appellant's negotiated guilty plea.

1. The original order of Judge Spaeth was entered on March 21, 1985. However, because of an error in that order, the April 18th order was necessary.

Unstated in this order, but clearly intended, was the caveat that the "special assignment judge" be someone other than the trial judge. The trial judge who, sans record, had not only been effectively reversed but also divested of jurisdiction, brought this highly unusual order to the attention of this Court. Because of the grave consequences of Judge Spaeth's order as well as its extraordinary nature, we were compelled to review the proceedings. Consequently on June 20, 1985, acting *sua sponte*, we entered a *per curiam* order exercising plenary jurisidiction over the case. In our order we limited our review to the issue of "whether the Superior Court has the power to entertain a plea bargain after the entry of a judgment of sentence." [2]

Prior to addressing the above issue we must briefly describe our jurisdiction as well as the form of the action involved. Article 5 Section 2 of the Pennsylvania Constitution provides in relevant part:

§ 2. Supreme Court

The Supreme Court (a) shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth; [and]

. . . . .

(c) shall have jurisdiction as shall be provided by law. Section 502 of the Judicial Code[3] describes the powers of this Court thusly:

§ 502. General powers of the Supreme Court

The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22,

---

2. Unfortunately, not all the parties chose to address this issue. Counsel for Mr. Chimenti and for the Philadephia District Attorney's Office opted to rephrase the issue so as to introduce superfluous matters relating to the general appellate powers of the Superior Court: a license which we do not appreciate. There is, however, so much wrong here, more adds little.

3. Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1973.

1722. The Supreme Court shall also have and exercise the following powers:

(1) All powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law.

(2) The powers vested in it by statute, including the provisions of this title.

42 Pa.C.S. § 502.

In *Commonwealth v. Onda*, 376 Pa. 405, 103 A.2d 90 (1954), former Chief Justice Horace Stern, speaking for the Court, expounded on the breadth of power embodied in the King's Bench grant. Citing Blackstone, Book 3 Ch. 4 § 42 he wrote, "the jurisdiction of this court [Court of King's Bench] is very high and transcendant. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, *or prohibit their progress below.*" *Id.*, 376 Pa. at 408, 409, 103 A.2d at 91 (emphasis in original).

In *Commonwealth v. Balph*, 111 Pa. 365, 3 A. 220 (1886) it was explained that jurisdiction of the King's Bench encompasses "the inherent power of removing by certiorari the record and proceedings of any criminal case from the inferior courts at any stage of the proceedings. *Id.*, 111 Pa. at 377, 3 A. 226. Cited with approval in *Commonwealth v. Onda, supra*, 376 Pa. at 409, 103 A.2d 90. *See also Schmuck v. Hartman*, 222 Pa. 190, 194, 70 A. 1091, 1092 (1908), ("[w]e may issue all sorts of process, and use and adopt all sorts of legal forms that are necessary to give effect to this supervisory authority.")

Thus, it was the inherent power accorded us through the Pennsylvania Constitution and the Judicial Code, which we exercised in bringing this matter up for review. By virtue of our *sua sponte* action, no party can be classified as petitioner, per se; [4] nor are the remaining parties respondents. Rather, the participants all take on the mantle of interested parties who more accurately can be described as intervenors in our *sua sponte* review. [5]

4. Though Judge Richette has designated herself as petitioner, it is unclear whether her status as trial judge would have afforded her standing to raise this issue had we not *sua sponte* sought to review it.

5. We note that the Attorney General of Pennsylvania, though not a party to any of the lower court proceedings, is now a participant in

Regarding the type of review applicable to this matter, our June 20, 1985 order specifically stated that the matter would be reviewed "as if on prohibition." That is the appropriate mode of review where the inquiry is whether a lower court has assumed "jurisdiction with which it is not legally vested." *Carpentertown Coal and Coke Company v. Laird,* 360 Pa. 94, 98, 61 A.2d 426, 428 (1948). *See generally, Commonwealth v. Department of Public Welfare v. Court of Common Pleas of Philadelphia County,* 506 Pa. 410, 415–416, 485 A.2d 755, 757–758 (1984).

Our inquiry into the actions of Judge Spaeth must necessarily begin with a review of the powers vested in the Superior Court. Article 5 Section 3 of the Pennsylvania Constitution provides that the Superior Court shall "have such jurisdiction as shall be provided by this Constitution or by the General Assembly." The Judicial Code defines the appellate powers of the Superior Court as follows.

§ 706. Disposition of appeals.

An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.

42 Pa.C.S. § 706.

There is no dispute that the Chimenti matter came within the jurisdiction of the Superior Court by virtue of his appeal from the trial court;[6] and it is the argument of Mr. Chimenti and the district attorney that Judge Spaeth's actions fell within the court's appellate power. In support the parties argue that the Judicial Code does provide that "court" may in certain instances be comprised of only one member;[7] and that the Rules of Appellate Procedure provide for a single judge to entertain certain applications for relief.[8] They then contend that the terms of Judge Spaeth's order were within the provisions of Section 706. These arguments rather disingenuously assume that Judge Spaeth's action constituted something other than the approval of a plea

this matter. Said participation was at the specific request of this Court.

6. See 42 Pa.C.S. § 742.

7. 42 Pa.C.S. § 102.

8. Pa.R.A.P. 123(e).

bargain.  We realize that the parties are somewhat constrained to argue their position, since there is no provision permitting a judge of the Superior Court to accept a guilty plea or a plea bargain;  however, the parties' assumption ignores the reality of what occurred.

It is undisputed that Mr. Chimenti and the district attorney's office struck a deal.  The deal provided Mr. Chimenti with certain guarantees, not the least of which was the opportunity to avoid a first degree murder conviction.  It is also undisputed that the provisions of this deal were spelled out to Judge Spaeth in an *in camera,* unrecorded proceeding, and that the completion of the deal depended on Judge Spaeth approving it in all its particulars.  Said particulars included vacating an apparently legally entered verdict; [9] and *commanding* a trial judge to accept a guilty plea, the terms of which had already been accepted by Judge Spaeth. Unless the district attorney is suggesting that a guilty plea could ever be blindly accepted by a hearing judge, it must be admitted that someone conducted an inquiry into the circumstances of defendant's plea.  Since on remand the "special assignment" judge was given no option of avoiding Judge Spaeth's command, the only person who conducted any inquiry was Judge Spaeth himself.  That Judge Spaeth attempted to avoid the results of this conclusion, by ordering a common pleas court judge to place his or her imprimatur on the guilty plea, does not alter the fact that he, Judge Spaeth, was the person who actually accepted the agreement tendered him by the parties.

The provisions relating to guilty pleas and plea agreements are spelled out in Pa.R.Crim.Pro. 319.  That rule provides:

   (a) GENERALLY.  Pleas shall be taken in open court. A defendant may plead not guilty, guilty, or with the consent of the court, *nolo contendere.*  The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.  If the defendant shall refuse to plead, the court shall enter a plea of not guilty on the defendant's behalf.

9.  The district attorney argues that there were potential problems with the verdict.  Before we could accept that contention, a review of the merits on the record would be necessary.

(b) PLEA AGREEMENTS.

(1) The trial judge shall not participate in the plea negotiations preceding an agreement.

(2) When counsel for both sides have arrived at a plea agreement they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. Thereupon the judge shall conduct an inquiry of the defendant on the record to determine whether he understands and concurs in the agreement.

(3) If the judge is satisfied that the plea is understandingly and voluntarily tendered, he may accept the plea. If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.

(c) MURDER CASES. In cases in which the imposition of a sentence of death is not authorized, when a defendant enters a plea of guilty to a charge of murder generally, the judge before whom the plea was entered shall alone determine the degree of guilt.

This rule makes clear that a presiding judge, faced with a guilty plea, may refuse to accept it. Pa.R.Crim.Proc. 319(a). Similarly, the judge may refuse to accept a plea agreement. Pa.R.Crim.Proc. 319(b)(3). In addition, subsection (c) provides in the most unequivocal terms that in cases such as the present, i.e., a murder prosecution in which the imposition of death is not authorized, and in which the defendant seeks to enter a plea of guilty to a charge of murder generally, the judge before whom the plea was entered *shall alone* determine the degree of guilt. Finally, the rule makes no provision for an appellate judge to entertain a guilty plea.

As we noted above, the order of Judge Spaeth directed the yet unnamed hearing judge to vacate the prior judgment of sentence and to accept the guilty plea of the defendant. This order reduced the prospective hearing judge to a "rubber stamp," empowered only to perform a ministerial function. Neither Judge Spaeth, nor the Superior Court at large, possessed such power. The order in question was also problematic on another score in that Judge Spaeth effectively abrogated a jury verdict without any semblance of a record. We can in no way condone such

an action; and although we are aware that Section 542 of the Judicial Code [10] provides the Superior Court with "powers necessary or appropriate in aid of its jurisdiction," such a grant of power was never intended to permit an appellate court to work in an *in camera*, unrecorded vacuum. We need not here follow the possible consequences of such anomolous proceedings, or even attempt to define the limits reachable by such unsurpation of authority. Suffice it to say that such secretive, unrecorded and unauthorized practices are condemned for whatever reason they are motivated.

Accordingly, the order entered by Judge Spaeth on April 18, 1985, is vacated, and this case is remanded to the Superior Court for proceedings on defendant's appeal.

LARSEN and PAPADAKOS, JJ., join in the majority opinion and file separate concurring opinions.

LARSEN, Justice, concurring.

I join the majority opinion.

The initial societal burden of Judge Spaeth's order would have been the clandestine changing of the defendant's crime and sentence from a minimum of life imprisonment to another crime and sentence which made the defendant eligible for immediate release and parole. The odious nature of Judge Spaeth's proceedings is the antithesis of American jurisprudence. Star Chamber proceedings were abolished in antiquity and any attempt to resurrect them should not be condoned by this Court. The dispensing of injustice is always in the right hands. (Stanislaus Lec)

PAPADAKOS, Justice, concurring.

I join in the Majority Opinion, but write separately to underscore my deep concern for the total breakdown of judicial discipline in superior court wrought by its former president judge in this case. In a setting painfully reminiscent of the Star-Chamber, abolished now for centuries, the chief administrative judicial officer of superior court, at the urging of qua conspiratorial, yet antithetical, counsel sought to bring about the early release of a convicted murderer in exchange for testimony that might form the basis of subornation of perjury charges against the convicted murderer's trial counsel.

10. 42 Pa.C.S. § 542.

The illicit orders to President Judge Bradley of the Philadelphia Common Pleas Court requiring him to oust the Honorable Lisa Richette, the trial judge, of jurisdiction, without cause shown, and to assign the case to one of three judges *selected by counsel,* and that such hand-picked judge shall, without any trial errors shown, vacate the jury's verdict of murder of the first degree (carrying with it a minimum sentence of life (18 Pa.C.S. § 1102) imprisonment) and, without question, accept a negotiated plea bargain providing for a conviction of murder of the third degree (carrying with it a maximum sentence of twenty years' imprisonment (18 Pa.C.S. § 1103(1)), are without precedent and, as stated by our Chief Justice during arguments, *mind-boggling.*

As a jurist exercising joint supervisory authority over our lower courts, I commend Judge Richette for her heroic methods of "blowing the whistle" on this scheme. Although Judge Richette impermissibly injected herself into the fray as a litigant by filing with us a formal petition (trial judges must never be litigants in cases over which they preside), I view her efforts as coming from a lack of direction by our Court to lower court judges who wish to bring matters of serious judicial concern to our attention. In my opinion, a simple letter to us would suffice.