## Acitelli v. Westmont Hilltop School District

*William K. Eckel*, for plaintiff.

*Wayne G. Wolfe*, for defendant.

McDONALD, P. J., January 19, 1973.—This matter is before the court en banc on preliminary objections to plaintiff's mandamus action. Plaintiff contends his discharge by defendant district as a temporary professional employe was invalid.

Plaintiff was first employed by defendant as a temporary professional employe by contract dated June 19, 1970. During the 1970-71 school year, he received two satisfactory ratings by the district superintendent. Prior to the 1970-71 school year, he had received a satisfactory rating as a temporary professional employe in the Shade-Central City School Dis-

trict in Somerset County, Pa., for the 1969-70 school year.

Plaintiff continued to teach in defendant district for the 1971-72 school year, and received a satisfactory rating for the first part of that year. Following the completion of his teaching duties that year, he was given an unsatisfactory rating under the Act of March 10, 1949, P. L. 30, art. XI, sec. 1123, 24 PS §11-123. Written notice of this rating was given him on June 12, 1972, by the district superintendent. On June 30, 1972, he received a letter from John B. Stockton, president of defendant's board, advising he would not be tendered a regular contract of employment. This notice was certified by the secretary of the board.

Plaintiff requested that a hearing be held on its refusal to tender him a contract of employment. No hearing was afforded.

Plaintiff argues he should have been tendered a permanent professional employe contract since he had attained that status by cumulating the year of teaching in Shade-Central City School District (1969-70) with the first year of teaching in defendant school district (1970-71). He had received a satisfactory rating for both these years. Thus, he contends, having completed two full years of teaching in the Commonwealth, albeit in different districts, he was entitled to a professional employe contract beginning the 1971-72 school year. The Public School Code of March 10, 1949, supra, P. L. 30, sec. 1121, 24 PS §11-1121, provides, inter alia:

"Each board of school directors in all school districts shall hereafter enter into contracts, in writing, with each professional employe who has satisfactorily completed two (2) years of service in any school district of this Commonwealth."

If his premise is valid, he was, at the beginning of the 1971 school year, and now is, entitled to a professional contract.

We must, however, read section 1121 with the provisions of section 1108, which govern the attainment of tenure status by temporary professional employes. This section provides, inter alia:

"(a) It shall be the duty of the district superintendent to notify each temporary professional employe, at least twice each year during the period of his or her employment, of the professional quality, professional progress, and rating of his or her services. No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating. The rating of a temporary professional employe shall be done as provided in section one thousand one hundred twenty-three of this act.

"(b) A temporary professional employe whose work has been certified by the district superintendent to the secretary of the school district, during the last four (4) months of the second year of such service, as being satisfactory shall thereafter be a 'professional employe' within the meaning of this article. The attainment of this status shall be recorded in the records of the board and written notification thereof shall be sent also to the employe. The employe shall then be tendered forthwith a regular contract of employment as provided for professional employes. No professional employe who has attained tenure status in any school district of this Commonwealth shall thereafter be required to serve as a temporary professional employe before being tendered such a contract when employed by any other part of the public school system of the Commonwealth."

It is apparent subsection (a) refers to "the district superintendent" of the district wherein the temporary professional employe is teaching under that status, and places upon that officer the obligation to notify the teacher of his rating "during the period of his employment." When read in light of subsection (b), i.e., "A temporary professional employe whose work has been certified by *the* district superintendent to the secretary of *the* school district, *during the last four (4) months of the second year of such service,* as being satisfactory shall. . . ." (Italics supplied.) It is evident the employe must have served in the same district for at least two years, and have been rated satisfactory during that time in order to attain professional status. Subsection (b) also used the word "the" when referring to "district superintendent," "secretary," "records," and "board." By limiting these references with the word "the," we must conclude the legislature was speaking of one school district. If it were otherwise, it would be necessary to substitute the words, "a," or "any," for "the." This, we cannot do.

We note also, the last sentence of subsection (b) above provides the attainment of professional status in "any school district of the Commonwealth," shall thereafter qualify the employe for professional status in "any other part of the public school system of the Commonwealth." This clearly means the tenure status must have been attained by two years' service in one district before he may seek that status in "any other part" of the Commonwealth school system.

It is clear from the reading of section 1108, two years' service with satisfactory rating is necessary to attain tenure status. The years of satisfactory service in separate districts may not be accumulated for this purpose. We agree with defendant that "differences are bound to exist between school districts, economic and

social and otherwise. What may fit the needs and requirements of one district might not suit another. Therefore, quality education would best be promoted by the opportunity of a school district to work with a teacher for two years before deciding on a permanent contract."

We agree also with defendant, at page 5 of its brief: "A school district in order to provide the best possible education for its children is entitled to observe and rate a teacher for two years before tendering him a permanent contract."

Plaintiff has not completed two years of satisfactory service in the defendant district and, therefore, was not entitled to a professional contract. Thus, his argument that he had attained this status and was, therefore, entitled to the safeguards of sections 1127 (procedure on dismissals) and 1122 (causes for termination of contract), both applicable to a professional employe, is without merit.

The issues of whether or not a mandamus would lie in such case, and whether defendant had the right to terminate plaintiff's employment have been settled by Nicolella v. Trinity Area School District School Board, 444 Pa. 544 (1971). There, the Supreme Court held the only prerequisite necessary for dismissal of a temporary professional employe was an unsatisfactory rating in compliance with section 1123. Thus, since there was no clear legal right to professional status possessed by the plaintiff, and no corresponding duty on the board under the facts to reinstate him, mandamus was not an appropriate remedy.

If we were to decide this case on this issue alone, the preliminary objections would be sustained, since, in our view, the issue of improper notice in accord with sections 1108(a) and (b) is without merit. The rating notice (complaint, exhibit B), together with a copy of

the rating form (complaint, exhibit C), were given to plaintiff by letter dated the same date the rating was made. The termination of employment was signed by the president of the board of defendant district, and certified by the secretary. We consider these notices to be a substantial compliance with section 1108.

Plaintiff, in addition to the issues discussed above, contends in his complaint that termination of his employment was invalid since he was not afforded a hearing under the Local Agency Law of December 2, 1968, P. L. 1133, sec. 1, et seq., 53 PS §11301, et seq.

Defendant contends the Local Agency Law is not applicable since plaintiff had not served two years in the defendant district, and was, therefore, not entitled to a hearing on his dismissal, or, if applicable, he has failed to appeal within 30 days of final adjudication, which was June 30, 1972, the date of the letter sent to him by the board president.

In Smethport Area School District v. Bowers, 440 Pa. 310 (1970), the Supreme Court considered the right of appeal from the decision of a school board discharging a district superintendent. Although it concluded the appeal in such case was to the Superior Court and so remitted, the court recognized a new concept in the law relating to administrative agencies. Mr. Justice Pomeroy stated, at pages 314, 315:

"The new Judiciary Article of the Constitution of Pennsylvania, adopted in 1968, effective January 1, 1969, provides in Section 9 thereof that there shall be a right of appeal 'from an administrative agency to a court of record or to an appellate court.' This introduced a new concept to Pennsylvania jurisprudence, one which recognized the important position of administrative agencies in modern government, the quasi-judicial functions that many of them perform, and the fact that both property rights and personal rights can

be seriously affected by their decisions. . . . Act No. 353 is entitled 'Local Agency Law' and is altogether new. As stated in the title to the Act, it implements Section 9 of Article V of the Constitution 'by providing for a right of appeal in all cases from adjudications of administrative agencies of political subdivisions; and providing for the practice and procedure before said agencies.' It specifically does not apply to an 'agency' as defined in the Administrative Agency Law."

On page 318, footnote 12, he stated:

"One of the purposes of the Local Agency Law and of the Administrative Agency Law, as amended, is to provide for procedural due process and to provide for appeals from an adjudication which is thought not to have complied with due process requirements. As stated above, such appeals are directed to the Superior Court."

We construe this to mean procedural due process before the local agency, as well as review by appeal.

The Local Agency Law implements the constitutional changes. Not only does it provide for appeals from the decisions of "local agencies," (section 7), but it sets up procedural safeguards which comply with due process. Section 4 provides: "No adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." This and other sections provide the procedure for taking of testimony, cross-examination, and the form and service of the adjudication.

We see in this new concept a defining of the judicial and quasi-judicial function of local administrative agencies, and the broadening of the definition of what is a judicial and quasi-judicial act. Heretofore, much emphasis was placed on the legislative character of administrative agencies, and many of their acts, which

now under the constitutional changes would be judicial and quasi-judicial, were characterized as administrative and nonjudicial: State Board of Education v. South Middleton Township School District, 430 Pa. 457 (1968); Esbenshade v. Department of Public Instruction, 181 Pa. Superior Ct. 232 (1956). However, in section 1 of the Local Agency Law, the legislature has defined an "adjudication" as "any final order, decree, decision, determination or ruling by a local agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made." We shall later discuss the facts of this case with respect to the definition of "adjudication."

Smethport Area School District v. Bowers, 219 Pa. Superior Ct. 169 (1971), has clearly ruled upon the applicability of the Local Agency Law to school boards. In that case, which, as above indicated, had been remitted by the Supreme Court, it was decided the decision of the school board in discharging a district superintendent was appealable to the Common Pleas Court under section 7 of the law. The facts of Bowers are somewhat different than those of the case at bar. However, the rationale that administrative agencies are now brought within a broader judicial framework of due process is pertinent. Appellant in Bowers was removed after hearing under sections 5-514 and 10-1080 of the Public School Code; whereas here, section 1108 is silent with respect to a hearing in the event the district superintendent's rating is unsatisfactory. This, however, in our view, should have no bearing on the outcome of the case if, in fact, the Local Agency Law is applicable. We conceive, if the law is applicable as to section 7, it then must apply as to all sections. This conclusion is buttressed upon the

evident purpose of the Local Agency Law to provide procedural due process: Smethport Area School District v. Bowers, 440 Pa. 310, footnote 12, page 318.

Since the Local Agency Law has been held to apply to decisions of the local school district, we must decide whether the action of defendant in terminating plaintiff's employment was an adjudication as defined in section 1, quoted above. Some insight into the thinking of the Supreme Court is afforded by its decision in Nicolella v. Trinity Area School District, supra, page 550, footnote 5, where Mr. Justice Roberts, in speaking of the right of plaintiff in that case to mandamus and whether there was a clear right to reinstatement and a corresponding duty of the board to do so, said:

"It should be noted, however, that today a similar situation would have to be considered in light of the Local Agency Law of 1968, Act of December 2, 1968, P. L. No. 353, P.S. §11301 et seq. (Supp. 1971). Cf. Smethport Area School District v. Bowers, 219 Pa. Superior Ct. 269, 280 A.2d 632 (1971)."

Thus, the Supreme Court has recognized the post-trial changes, by constitutional mandate and enactment of the Local Agency Law, on procedural due process before local agencies. We note, however, in Nicolella, even had the case arisen after these changes, the outcome would have been the same, since there had been a hearing before the board.

Additional support for this position is found in Shellem v. Springfield School District, 6 Comm. Ct. 515 (1972). In that case, appellee was dismissed as a substitute teacher after a "hearing" that failed to comply with due process requirements. The dismissal and "hearing" was under section 5-514 of the Public School Code. While holding under that section, the court noted, pages 519, 520, "Further, we believe that

Shellem was not afforded the hearing required by the Local Agency Law of 1968, Act of December 2, 1968, P. L. 1133, No. 353, 53 P.S. §11301 et seq. (Supp. 1971). Cf. Smethport Area School District v. Bowers, 219 Pa. Superior Ct. 269, 280 A.2d 632 (1971)." Query, if a "substitute teacher" must be afforded a hearing under either section 5-514 or the Local Agency Law, why would a temporary professional employe not be entitled to the same?

Plaintiff had completed two and one-half years of satisfactory service as a teacher (albeit in two districts). It was only during the last four months of his employment with defendant he was rated unsatisfactory. Had the rating been satisfactory, defendant would have been required to tender him a professional contract: Public School Code, sections 1108, 1121.

We may take judicial notice there are many rights and benefits which accrue to one who has attained tenure status: he may be employed in other districts without necessity of the two-year probationary period; he may only be removed after hearing and for cause, then only upon a two-third roll call vote of the board members; he may appeal the decision to the Superintendent of Public Instruction, and thereafter to the common pleas court; he is entitled to annual salary increments. While the appellate courts have held it was not the intent of the Teachers Tenure Act to confer special privileges or immunities upon professional employes, it is evident the rights conferred in the way of job security and due process procedural safeguards are personal professional benefits which have the import of property rights.

Plaintiff, by the decision of defendant, based upon a rating by the district superintendent, has been stamped in his chosen profession with the stigma of incompetency. While this does not preclude employ-

ment elsewhere in the Commonwealth school system, it is only reasonable to conclude it will limit seriously his job opportunities. He has lost by this action the benefits of tenure status, and if fortunate enough to secure another teaching job, must again serve a two-year period as a temporary professional employe.

In our opinion, the decision by defendant comes within the definition of "adjudication" under the Local Agency Law. The only differences we perceive in the discharge of a district superintendent, as in Bowers and the case at bar, is the right of the former to a hearing. In view of the new concept introduced by the Local Agency Law in the review of administrative agency decisions, we construe Bowers, which passed on the right of appeal after the hearing, to mean dismissal itself must accord with due process, whether on appeal or initially before the board.

Plaintiff requested a hearing (although erroneously under section 1127 of the School Code), and none was afforded. He was served with a rating form which contained conclusions without supporting facts, and a letter which blandly terminated his employment because of the rating. At no time has he had an opportunity to hear the factual basis of the unsatisfactory rating. He contends defendant's action was arbitrary and capricious. While an arbitrary and capricious action may or may not mean bad faith, it does under the facts here raise the issue of due process. In D'Anjolell v. State Board of Funeral Directors, 3 Comm. Ct. 64, 69 (1971), it was stated, "The courts and the litigants are entitled to clear, precise and unambiguous statements of position from these quasi-judicial bodies. This is especially so where a citizen's professional pursuit is at stake." Although D'Anjolell arose under the Administrative Agency Law and a hearing had been held, we call attention to the simi-

larity of language in that law to the Local Agency Law and the requirement in the aforesaid decision that one whose "professional pursuit is at stake" is entitled to know the basis of facts and conclusions upon which the administrative agency's adjudication rests.

We must conclude, in view of the foregoing discussion, the adjudication of defendant affected the personal and property rights of plaintiff. If the adjudication were valid, he had, under the Local Agency Law, the right of appeal to this court within 30 days. However, since the mandamus action was commenced more that 30 days after the letter of June 30, 1972, terminating his employment (the action was filed August 29, 1972), defendant argues he is barred by the limitation. With this, we do not agree. First, if the Local Agency Law applies, as we have concluded it does, no valid adjudication was made, since plaintiff was not given an opportunity to be heard, as required by section 4; second, this was not, per se, an appeal from the adjudication, but rather a mandamus action.

In such case, having concluded the Local Agency Law applies, we must examine the remedial basis of mandamus. As stated in Nicolella, page 549:

" 'Mandamus is an extraordinary writ which lies to compel the performance of administerial act or mandatory duty where there is a *clear* legal right in the plaintiff, corresponding duty in the defendant, and a want of any other appropriate and adequate remedy.' "

In view of the foregoing discussion, we have concluded plaintiff had a right to a hearing on his dismissal, and there was a corresponding duty on defendant to afford him this opportunity. Mandamus was in our view the only adequate and appropriate remedy.

Unfortunately, since the matter is before us on preliminary objections, we cannot at this state of the proceeding direct a hearing. Our only recourse is to sus-

tain those preliminary objections which relate to plaintiff's averment he had attained tenure status, and to dismiss the objections which relate to the Local Agency Law.

In arriving at this decision, we have given considerable thought to the need of a discretionary right in boards of school directors to dismiss teachers who are not competent. We certainly agree with the conclusion of Judge Woodside, so well stated in Johnson v. United School District Joint School Board, 201 Pa. Superior Ct. 375 (1963):

"The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth, . . . It was the intention of the legislature to subordinate all other considerations to this policy."

Our decision does not in any way subvert the fundamental policy. The boards of school directors, to whom have been delegated the supervision of local school districts, have a responsibility to provide that "better education for the children of the Commonwealth." To do so effectively, they must have wide discretion. The Local Agency Law is not intended to interfere with the exercise of this discretion. Its plain and intended purpose is to provide procedural due process in cases of adjudications by a school board. We do not perceive the principle of due process will in any way strike at the fundamental policy of providing a better education for the children of the Commonwealth.

## ORDER

Now, January 19, 1973, after argument and upon consideration of the record and briefs, it is hereby ordered and directed:

1. Defendant's preliminary objections numbers 2 and 3 are sustained.

2. Defendant's preliminary objections numbers 1, 4, 5, 6 and 7 are dismissed.

Defendant is directed to file a responsive pleading to the complaint within 20 days after service of a copy of this opinion and order.