2019 PA Super 272

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
SALVATORE F CHIMENTI            :
                                :
            Appellant           :    No. 2262 EDA 2018

Appeal from the PCRA Order Entered July 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0633651-1982

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED SEPTEMBER 04, 2019**

Appellant, Salvatore F Chimenti, appeals from the July 20, 2018, order

entered in the Court of Common Pleas of Philadelphia County dismissing

Appellant's third petition filed under the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-9546.  After a careful review, we affirm.

This Court has previously set forth the relevant facts and procedural

history, in part, as follows:

> At approximately 11:30 p.m. on May 10, 1982, [Appellant]
> shot Andrew Tucker seven times causing his death.
>
> Several days prior to the shooting, [Appellant] and Tucker
> had engaged in a verbal altercation, which [Appellant] concluded
> made him "look bad" in the neighborhood.  [Appellant] instructed
> Bobby Harris to bring the victim to [Appellant's] home.  [O]n May
> 10, Harris saw the victim in a tavern and offered to drive him to
> see [Appellant].  When the two men confronted each other again,
> another angry verbal exchange ensued in front of several
> witnesses, including Harris, [Appellant's] brother Mario, and Mike
> Cavanaugh.  Tucker was unarmed.  [Appellant] and Mario both
> carried guns.  Mario and Cavanaugh were standing on the porch

_____

\* Former Justice specially assigned to the Superior Court.

of [Appellant's] house. [Appellant] was on the third step leading up to the porch. As the argument became more heated, [Appellant] drew a .38 caliber weapon and fired seven shots at Tucker, striking him three times in the chest, in the groin, through his back and into his heart, the back of his knee[,] and the back of his armpit. Mario also opened fire with a .25 caliber weapon, which likely caused a wound to Tucker's face. Harris was standing next to Tucker on the pavement when he was shot. When the police arrived, they found a fully loaded .38 caliber gun lying next to Tucker's left leg. Tucker was right-handed.

No witnesses came forward for several weeks. During that period, [Appellant] repeatedly left messages for Bobby Harris's family, threatening to harm them if Harris implicated [Appellant]. Harris responded by seeking legal counsel, and [he] gave a full statement to the police.

[Appellant] testified in his own behalf. He stated that Harris and Tucker were members of an organized crime family, which had a "contract" on his life because he had not repaid a loan. He claimed that on the night of the shooting he retrieved a gun for self-defense, and shot Tucker as he was screaming out of control and displaying a gun wrapped around a jacket. Additional evidence was presented that Harris was on the porch and tried to shoot [Appellant], but Mario deflected the gun away. One of the several defense eye-witnesses to support the above scenario was Gregory Spain.

In rebuttal, the Commonwealth produced a witness who testified that Spain had told her that he [would testify] as a surprise witness at trial, even though he had not witnessed the incident.

*Commonwealth v. Chimenti*, No. 2599 PHL 1995, at *1-2 (Pa.Super. filed 7/3/97) (unpublished memorandum) (citation to PCRA court opinion omitted).

At the conclusion of trial, the jury convicted Appellant of first-degree murder and possession of an instrument of crime, and Appellant's trial counsel, Joel Moldovsky, Esquire, filed post-verdict motions. Thereafter, Appellant retained new counsel, A. Charles Peruto, Jr., Esquire, who filed

supplemental post-verdict motions. On January 26, 1984, the trial court denied Appellant's post-verdict motions; however, four days later, Appellant filed additional supplemental post-verdict motions, and he retained new counsel, Michael M. Mustokoff, Esquire, who contacted the Philadelphia District Attorney's Office with information concerning trial counsel's alleged subornation of perjury, particularly as to Gregory Spain.

[Thereafter, the] Commonwealth and [Appellant] struck a deal providing that if [Appellant] cooperated in the Commonwealth's investigation of trial counsel [and did not file post-sentence motions raising claims of ineffectiveness with regard to the subornation of perjury so that trial counsel would not be "tipped off,"] the parties would enter into a plea agreement whereby [Appellant's] conviction would be vacated and he would plead guilty to murder generally, with a certification that the degree of guilt would rise no higher than third degree.

On July 9, 1984, the trial court denied [the] supplemental post-verdict motions and sentenced [Appellant] to life imprisonment for first-degree murder and to a concurrent two and one-half years' imprisonment for [possession of an instrument of crime]. [Appellant did not file post-sentence motions.] Appellant filed a [protective] direct appeal to this [C]ourt and cooperated in the Commonwealth's investigation of trial counsel.

On March 15, 1985, the parties jointly petitioned then-President Judge Edmund B. Spaeth, Jr., of [this Court] to effectuate the agreement between [Appellant] and the Commonwealth by remanding the case to the Common Pleas Court for "special assignment to a judge who, after sentence has been vacated, will accept [Appellant's] negotiated guilty plea." In an order dated April 18, 1985, Judge Spaeth granted the petition.

On June 20, 1985, upon application of the trial judge, the Honorable Lisa Richette, our Supreme Court assumed plenary jurisdiction of the case to determine "whether the Superior Court has the power to entertain a plea bargain after the entry of a judgment of sentence." ***In the Matter of Commonwealth v. Chimenti***, 510 Pa. 149, 151, 507 A.2d 79, 80 (1986). On March 27, 1986, the [Supreme] Court vacated Judge Spaeth's order and remanded the case to [this Court] for proceedings on [Appellant's]

- 3 -

direct appeal. [Specifically, our Supreme Court rejected enforcement of the agreement entered into by the District Attorney's Office and Appellant.] The [Supreme] Court [held] that

> the order of Judge Spaeth directed the yet unnamed hearing judge to vacate the prior judgment of sentence and to accept the guilty plea of [Appellant] to murder generally (not to rise higher than third degree). This order reduced the prospective hearing judge to a "rubber stamp," empowered only to perform a ministerial function. Neither Judge Spaeth, nor the Superior Court at large, possessed such power. The order in question was also problematic on another score in that Judge Spaeth effectively abrogated a jury verdict without any semblance of a record. We can in no way condone such an action….

*Id.* at 155-56, 507 A.2d at 83.

> On May 6, 1986, through new counsel, Paul Schechtman, Esquire, [Appellant] petitioned this [C]ourt for a remand to the trial court for an evidentiary hearing on whether trial counsel suborned perjury at trial. In an order dated May 20, 1986, this [C]ourt denied the request "without prejudice to renew the request and argue the issue of ineffectiveness of trial counsel in briefs and before the panel."

*Chimenti*, No. 2599 PHL 1995, at *3-4.

On direct appeal, Appellant relevantly argued Attorney Moldovsky was ineffective for suborning perjury[1] and failing to call two witnesses who would have truthfully testified to seeing the gun lying next to the decedent's body

---

[1] Specifically, Appellant alleged that trial counsel suborned perjury from at least four witnesses, including Mr. Spain, with the purpose of misleading the jury into thinking that the decedent **and another man** pointed weapons at Appellant, thus attempting to explain to the jury why the police did not find a weapon next to the decedent (*i.e.*, the other man took it when he ran from the scene).

immediately after the shooting. In finding Appellant was not entitled to relief on his ineffectiveness claims,[2] we held the two potential witnesses would not have assisted Appellant's defense and, in fact, would have impeached aspects of Appellant's self-defense theory. Also, we held there was no evidence in the certified record indicating that trial counsel suborned perjured testimony.[3] Consequently, we affirmed the judgment of sentence on April 20, 1987.[4]

_____

[2] We note Appellant filed his direct appeal prior to our Supreme Court's decision in **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002), and its progeny, which hold that claims of ineffective assistance of counsel are generally deferred until collateral review.

[3] Appellant argued on direct appeal that the District Attorney's Office completed an investigative report acknowledging trial counsel suborned perjury, and Appellant took polygraph examinations, which suggested he was telling the truth about trial counsel suborning perjury. However, we noted that neither the investigative report nor the polygraph examination results were included in the certified record, and thus, we declined to consider the documents. **Commonwealth v. Chimenti**, 524 A.2d 913, 919 (Pa.Super. 1987).

[4] Moreover, Appellant additionally argued on direct appeal that the Commonwealth breached the parties' post-verdict agreement by contesting Appellant's ineffective assistance of counsel claims on direct appeal. **Chimenti**, 524 A.2d at 919 n.2. We found the clam to be meritless. Specifically, we held:

> Pursuant to the agreement, [A]ppellant and the Commonwealth applied to this Court for an order remanding the case to the trial court which would vacate [A]ppellant's sentence and accept [A]ppellant's negotiated guilty plea. This Court granted the requested order. Our Supreme Court, however, vacated the remand order finding that this Court lacked authority to direct the trial court to vacate [A]ppellant's prior judgment of sentence and to accept [A]ppellant's guilty plea. **See Commonwealth v. Chimenti**, 510 Pa. 149, 507 A.2d 79 (1986). As the Commonwealth argued in its appellate brief [on direct appeal]:

***Commonwealth v. Chimenti***, 524 A.2d 913 (Pa.Super. 1987). Appellant's petition for allowance of appeal was denied by our Supreme Court on September 29, 1987.

On September 18, 1990, Appellant filed a counseled petition under the PCRA, which the lower court denied, and Appellant filed a counseled appeal to this Court. On appeal, Appellant averred, *inter alia*, that he was entitled to specific performance of the agreement he made with the Commonwealth relating to trial counsel's alleged subornation of perjury, and all prior counsel were ineffective in failing to raise either trial counsel's ineffectiveness in allegedly suborning perjury or post-verdict counsel's ineffectiveness in attempting to enter into an agreement with the Commonwealth that was void *ad initio*.

In finding Appellant was not entitled to relief on his claims, we relevantly held the following:

> Appellant first claims he is entitled to specific performance of a written agreement to vacate his statutorily-mandated judgment of sentence and enter a guilty plea to, at most, third-degree murder. However, our Supreme Court invalidated that agreement, despite the Commonwealth's advocacy of it, because it "effectively abrogated a jury verdict without any semblance of

---

"The Commonwealth did not, as [Appellant] contends, renege on its plea bargain negotiations, but rather zealously sought to uphold the plea in the Pennsylvania Supreme Court. That Court rejected the Commonwealth's argument, however, and ruled that the parties could not plea bargain away a valid jury verdict." (Reply brief for [A]ppellee at 4).
***Chimenti***, 524 A.2d at 919 n.2.

a record." ***Chimenti***, 510 Pa. at 155, 507 A.2d at 83. Indeed, what the agreement clearly contemplated, though not specifically spelling it out, was vacating a jury verdict, not on the basis of a hearing or a record but simply on the basis of allegations in [A]ppellant's uncontested PCRA petition. A defendant's conviction and mandatory sentence may not be set aside merely by agreement of the parties. This claim does not entitle [A]ppellant to PCRA relief.

\*\*\*

Appellant's final two claims are related. He argues he is entitled to a new trial or the opportunity to file post-trial motions *nunc pro tunc* because all prior counsel were ineffective for failing to raise trial counsel's ineffectiveness in allegedly suborning perjury and post-verdict counsel's ineffectiveness in entering into an agreement that was void *ad initio*.

\*\*\*

The record shows it was [A]ppellant himself who gave perjured testimony at trial and willingly participated in presenting a perjured defense. N.T. PCRA, 11/17/92, at 39. Appellant testified he personally asked Gregory Spain to contact trial counsel so that both he and Spain could testify Spain drove [A]ppellant to the crime scene (when in fact Spain had not). Thus, the record shows [A]ppellant's own testimony at trial was in furtherance of a deliberate trial strategy chosen by himself and counsel. Our Supreme Court has responded to a similar claim defense counsel compelled his client to offer false testimony:

> Having freely and deliberately chosen to offer testimony which he now asserts was false, [the] appellee stands before this Court and attempts to reap a windfall new trial on account of his own perjury. The criminal justice system cannot and will not tolerate such an obvious and flagrant affront to the integrity of the truth determining process thinly disguised under the rubric of "ineffective assistance."….

***Commonwealth v. McNeil***, 506 Pa. 607, 618-19, 487 A.2d 802, 807-08 (1985)[.]

We note [A]ppellant apparently never attempted to substantiate the allegation that counsel suborned perjury by calling trial counsel to testify. This claim remains further unsubstantiated by any record evidence. The PCRA court appointed counsel for witnesses who testified at trial and who

- 7 -

[A]ppellant claimed would support this allegation. None, however, did so.

\*\*\*

Appellant's claims regarding all prior counsels' ineffectiveness are similarly unsupported. Appellant raised no clear claim of ineffectiveness against [Attorney] Peruto in his counseled PCRA petition. Even assuming this claim is properly before us, nothing in the record—including five hearings over seven months—suggests [Attorney] Peruto refused to pursue the claim that trial counsel suborned perjury.

\*\*\*

Regarding [Attorney] Mustokoff's ineffectiveness in advising [A]ppellant to enter into an agreement which later was effectively rendered null and void by our Supreme Court, the law is clear that counsel is not ineffective in failing to predict future decisions….Since [A]ppellant has no witness willing to substantiate his claim that trial counsel suborned perjury, no counsel can be deemed ineffective for failing to pursue, much less prevail on it.

*Chimenti*, No. 2599 PHL 1995, at *6-13 (some citations omitted).

Consequently, this Court affirmed the PCRA court's denial of relief on

July 3, 1997. *Id.*

On November 23, 1998, [Appellant] filed a Petition for *Habeas Corpus* pursuant to 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). On July 5, 2000, Federal District Court Magistrate Clifford Scott Green held an evidentiary hearing in which the court heard testimony from Frank Cioffi, Maria Elizabeth Convery (now Dougherty), Frank Martorano, and Joel Moldovsky, Esquire. *Chimenti v. Frank, et al.*, 2001 WL 21496 (E.D.Pa. Jan. 9, 2001). The court reviewed the process by which the Pennsylvania Superior Court evaluated [Appellant's] claim that counsel suborned perjury and noted that it determined the record was "devoid of any proof that [Appellant's] trial counsel suborned perjured testimony." Even after holding an evidentiary hearing to allow [Appellant] to add to the record, [Appellant] failed to offer any evidence that [Appellant's] own testimony, which was consistent with the alleged perjured testimony, was the result of trial counsel's

influence, that counsel suborned perjury from other witnesses, or that [Appellant] was prejudiced from any of counsel's tactical decisions or alleged deficiencies.[5]

PCRA Court Opinion, filed 11/30/18, at 11-12 (citations and footnote omitted) (footnote added).

On March 21, 2016, with the assistance of Jerome M. Brown, Esquire, Appellant filed a counseled document entitled "Expedited Motion for Compassionate Release And/Or For *Habeas Corpus* Relief." Therein, Appellant sought compassionate release from prison for the treatment of Hepatitis C, cirrhosis, and liver cancer. Additionally, he sought "*habeas corpus*" relief and relevantly averred the following:

> **4.** After trial, [Appellant] hired [Attorney Mustokoff], who at [Appellant's] instigation, investigated and presented a claim of subornation of perjury by [Attorney] Moldovsky, especially as to Greg Spain, a witness who was not present when the incident occurred, but had claimed to have been at the scene of the crime at trial. However, another witness, Elizabeth "Cookie" Harris, met Spain at a bar and they spent a night together. He told her that he was going to commit perjury in this case, and this witness unraveled the self-defense orchestrated by [Attorney] Moldovsky.
>
> **5.** As a result of the above, the parties entered an agreement, the substance of which was that [Appellant] agreed to aid the Commonwealth's investigation into the subornation of perjury and agreed to postpone raising this ground of ineffectiveness. If the Commonwealth found the allegations to be reliable, it would seek

---

[5] The federal court also concluded Appellant's claims were exhausted at state court because the claims were previously litigated in Appellant's first PCRA petition and were time-barred. *Id.* Further, the federal court specifically indicated Appellant's jury conviction and mandatory sentence could not be set aside merely by agreement of the parties. *Id.* Finally, the federal court concluded the District Attorney's opposition to Appellant's first PCRA petition, which Appellant alleged breached the agreement, did not violate Appellant's due process rights. *Id.*

a remand to enter into a plea to third degree murder, which carried a maximum sentence of 20 years, rather than the life sentence he actually received. If the Commonwealth did not find this information to be reliable, then the parties agreed to seek a remand for [Appellant] to litigate the ineffective assistance of counsel claim.

**6.** The Commonwealth then conducted its own investigation and found these claims to be true. Having determined the truth of this information, the parties agreed that the matter would be remanded to the trial court so that the judgment could be vacated, and a plea entered that would rise no higher than third degree murder, again a 20-year maximum sentence.

**7.** The Commonwealth entered into this agreement with the blessings of then District Attorney, Edward Rendell,[6] and [former] First Assistant District Attorney, Arnold Gordon, who opined that [it] was fundamentally unfair that [Appellant] was convicted of first degree murder and serving a life sentence, given the manner in which [Attorney] Moldovsky handled this case and also because of the poor quality of the Commonwealth's witnesses.

**8.** In a brief written by Eric B. Henson, Esquire, who was the [former] Deputy District Attorney in charge of appeals, the Commonwealth miraculously and uncharacteristically stated:

> "The Commonwealth also reassessed the trial record and found that the trial court, the prosecutor, and trial counsel had committed potentially reversible error. Finally, the Commonwealth evaluated the evidence which supported defendant's first degree murder conviction. It was unable to prove beyond a reasonable doubt that [Appellant] or his witnesses had "planted" a gun on the victim's body to fabricate [Appellant's] self-defense claim."

**9.** What happened next is a travesty of justice.

**10.** The Commonwealth believed the information to be reliable and [former] D.A. Rendell was even to assure [Appellant] that immunity would be granted to any witnesses who would testify at any future proceedings. [Former Deputy District Attorney] Henson and [Attorney] Mustokoff appeared before then President Judge Edmund B. Spaeth, Jr., and worked out the remand to enter

_____

[6] Edward Rendell was later elected as the Governor of Pennsylvania.

the plea before a different jurist than Judge Richette. However, Judge Richette got wind of this agreement, and filed a writ of prohibition in the Supreme Court. That Court scotched the deal.

**11.** A change in District Attorney Administrations led to a reneging on the deal. The District Attorney's Office then fought [Appellant's] efforts at relief even rescinding the immunity offers. The failure of post-conviction counsel to file the ineffectiveness claim as to [Attorney] Moldovsky led to a waiver of that issue on appeal and many others. The rest is history.

**12.** In short, what happened was that [Appellant] to his detriment relied on the D.A.'s agreement. [Attorney DeFino, who was Appellant's] attorney [for] the [first PCRA petition], was not even able to produce the witnesses who would have established that the gun was on the victim because the new D.A.'s Office objected that post-trial counsel and appellate counsel had waived these issues. Thus, the new D.A. not only did not live up to the agreement, but destroyed any chance [Appellant] had of justice by obligating him to delay in litigating the ineffectiveness issue.

**13.** [Appellant] is now serving his 34th year of incarceration for a sentence that should have risen no higher than 5-10 years. Moreover, he had a number of witnesses who were intimidated into not testifying at the [PCRA] hearing. There were ample witnesses who would have truthfully testified that [Appellant] acted in self-defense after being stalked by a person who was hired to perform a "hit" against him.

**14.** Indeed, and remarkably, he was standing on the front stoop of his mother's home when shots were fired. Who would kill some[body] at the front door of his mother's home, unless it was an act of self-defense? Moreover, there was no area for him to retreat.

**15.** Significantly, under the new version of…18 Pa.C.S. § 505, the "Castle Doctrine[,]" would have applied to his case and he would have been found not guilty under this doctrine.

**16.** There were also a number of witnesses who were scared off by [Attorney] Moldovsky's tactics when the case was naturally a justifiable self-defense case. Moreover, there was other evidence that the victim, Tucker, had a gun and was out to kill [Appellant]. Indeed, Tucker's own roommate testified that Tucker was out to kill [Appellant] that evening. Other witnesses, Marie Convery and Frank Cioffi, observed a handgun next to the body of the

deceased, which realistically eviscerated the prosecution's "planted gun" theory.

**17.** Unfortunately, they would not deviate from the truth when [Attorney] Moldovsky requested them to do so, and they did not testify, despite the obvious importance of their testimony to the self-defense [claim].

**18.** Thus, it is respectfully submitted that [Appellant] is an innocent man. That knowledge has provided him with little solace.

Appellant's Expedited Motion for Compassionate Release And/Or For *Habeas Corpus* Relief, filed 3/21/16, at ¶¶ 4-18 (emphasis omitted) (footnote added).

Despite the fact two well-respected district attorneys, Ronald Castille and Lynn Abraham, were found by this Court to not have breached any "post-verdict agreement" by contesting Appellant's ineffective assistance of counsel claims on direct appeal, *Chimenti*, 524 A.2d at 919 n.2, Appellant argued in his motion that, because the District Attorney's Office failed to abide by its agreement, Appellant is serving an illegal sentence. *See* Appellant's Expedited Motion for Compassionate Release And/Or For *Habeas Corpus* Relief, filed 3/21/16. Appellant also argued in his motion that his life sentence without the possibility of parole constitutes "cruel and unusual punishment" since he did not receive the benefit of the "post-verdict agreement." *See* Appellant's Expedited Motion for Compassionate Release And/Or For *Habeas Corpus* Relief, filed 3/21/16. Accordingly, Appellant requested the lower court vacate his judgment of sentence and remand for further proceedings.

On April 20, 2017, the lower court held a hearing on the "Expedited Motion for Compassionate Release And/Or For *Habeas Corpus* Relief." At the

hearing, Appellant's counsel acknowledged that Appellant was seeking "PCRA relief." N.T., 4/20/17, at 3. Additionally, an Assistant District Attorney indicated her belief that, since Appellant was seeking PCRA relief, the motion "would have to be re-coded as a PCRA in the system and then [the District Attorney's Office] would let Ms. Godfrey[7] know, and one of the attorneys would be assigned to handle that." *Id.* at 6 (footnote added).

The lower court concluded the *habeas corpus* portion of the petition sought relief available under the PCRA, and thus, the petition should be "re-coded" and/or "refiled" as a PCRA petition for a different judge's consideration. *Id.* at 9-10. The lower court specifically indicated it was unsure as to the exact procedure the court would use to ensure that the petition was administratively reassigned and considered as a PCRA petition. *Id.* at 10-11 (lower court judge indicating "I don't know whether or not they're going to require [Appellant] to actually physically refile it…with this Court's determination, then attach it, I'm just not sure of what the procedure is. But it's my understanding at this time…it is to be re-coded[.]").

Furthermore, by order entered on April 20, 2017, the lower court directed the following:

> Defense Motion for Compassionate Release which was filed 3/21/2017 is DISMISSED WITHOUT PREJUDICE by agreement of counsel. After treatment [Appellant's] Hep C is cured. [Appellant] has cirrhosis of the liver[.] In the event he needs a liver transplant in the future and is accepted for a transplant, he may file a Motion

---

[7] The record is unclear as to whom this is referring.

- 13 -

for Compassionate Release.  Defense Motion of *Habeas Corpus* PCRA should be re-coded and/or refiled as a Petition for PCRA and reassigned for further proceedings.

Lower Court Order, filed 4/20/17.[8]

The docket remained without activity until February 23, 2018, when the District Attorney's Office filed a letter, which it sent to Appellant's attorney, Todd Mosser, Esquire, regarding the status of Appellant's case.  Despite the fact our Supreme Court held the "post-verdict agreement" is unenforceable, and thus issues related to the "post-verdict agreement" are moot, ***see Chimenti***, 510 Pa. at 155, 507 A.2d at 83, Assistant District Attorney Andrew Wellbrock indicated the following:

> On February 1, 2018, the new administration in the District Attorney's Office recently reorganized and renamed the Conviction Review Unit.  As a result of that reorganization, the new unit (Conviction Integrity Unit) reviewed the above referenced case pursuant to your request.  This letter is written to inform you of the results of that review.
>
> Relying in part on § 9545(b)(1) of the PCRA, the District Attorney's Office agrees your client is entitled to relief.  The history of this case has revealed that your client's good faith reliance on a plea agreement, combined with this office's ongoing interference in effectuating the terms of that agreement, has resulted in an inability to effectively litigate and prove a violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.
>
> In order to remedy the constitutional violation recognized and agreed to by this office in 1984, we will no longer oppose the

---

[8] We note the lower court had an obligation to transfer the misfiled/mislabeled petition to the proper division so that it could be considered under the auspices of the PCRA.  Our review of the record reveals that the lower court has not entered a final order disposing of the March 21, 2016, petition.

original plea agreement offered and entered into by The Honorable Edward Rendell when he was District Attorney. Accordingly, we agree [Appellant's] conviction and sentence should be vacated, a new trial granted and, pursuant to the terms of the 1984 plea agreement, he shall then enter a plea to murder (not to rise higher than third degree) and Possession of an Instrument of Crime. In turn, the Commonwealth will recommend that your client be sentenced to the maximum term of imprisonment legally allowed for those crimes at the time of the offense—12.5 to 25 years.

Commonwealth's Letter, dated 2/23/18.

Three days later, on February 26, 2018, with the assistance of Attorney Mosser, Appellant filed a counseled document entitled "Defendant's Petition Pursuant to the Post Conviction Relief Act." Therein, Appellant sought to invoke the governmental interference timeliness exception to the PCRA.

Specifically, Appellant referenced the post-verdict agreement discussed *supra* and admitted that former District Attorney Rendell "rigorously" sought to honor the agreement. However, Appellant further asserted that, thereafter and for the next thirty years, the government (*i.e.*, the District Attorney's Office) obstructed and interfered with the agreement. He averred that, as part of the post-verdict agreement, the parties agreed that the District Attorney's Office would not oppose Appellant's claims of ineffective assistance of trial counsel; however, thereafter, the District Attorney's Office, which was led by a new administration, breached the agreement by opposing Appellant's

claims of relief in his direct appeal, federal *habeas corpus* case, and first PCRA petition.[9]

Appellant averred the governmental interference ended on February 23, 2018, after the District Attorney's Office was assumed by Lawrence Krasner[10] and Assistant District Attorney Andrew Wellbrock filed the above letter indicating the District Attorney's Office would not oppose Appellant's attempts to litigate his claims of trial counsel's ineffectiveness: suborning perjury and failing to call Maria Convery and Frank Cioffi as defense witnesses. Appellant specifically averred that "[u]ntil now, [Appellant] has been precluded from appropriately litigating these claims because of [former] D.A. Castille's and Abraham's refusal to honor the agreement that the D.A.'s Office had previously executed with [Appellant] to not oppose his claims." Defendant's Petition Pursuant to the Post Conviction Relief Act, filed 2/26/18, at 8-9. Appellant contended that, under the agreement, he had the right to have his ineffectiveness claims heard by the court and "agreed to, by the D.A.'s Office as far back as 1984." *Id.* at 9. He further contended the "governmental

_____

[9] With regard to the "new administration," Appellant indicated that, during the litigation of his direct appeal, Ronald Castille, who later became the Chief Justice of the Supreme Court, was elected as the District Attorney and assumed office. Also, he indicated that, during the litigation of his federal *habeas corpus* case, Lynne Abraham was elected as the District Attorney and assumed office.

[10] We note that Lawrence Krasner was elected as the most recent District Attorney of Philadelphia, and on January 2, 2018, he was sworn into office.

inference is now over" and he is now entitled to "litigate his claims of ineffectiveness in this Court" without opposition from the District Attorney's Office. *Id.*

The Commonwealth did not file an answer in opposition to Appellant's PCRA petition, and on June 22, 2018, the PCRA court provided Appellant with notice of its intent to dismiss under Pa.R.Crim.P. 907. Appellant filed a reply in opposition to the PCRA court's dismissal notice, as well as an amended PCRA petition reiterating the Commonwealth breached the post-verdict agreement by opposing Appellant's various attempts at relief. The Commonwealth filed an answer on July 16, 2018, advocating in favor of the PCRA court granting Appellant relief.

By order entered on July 20, 2018, the PCRA court dismissed Appellant's February 26, 2018, PCRA petition, and this timely, counseled appeal followed.[11] The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b)

---

[11] As indicated *supra*, although the lower court did not enter a final order as to Appellant's March 21, 2016, petition (which constitutes his second PCRA petition), Appellant subsequently filed, and the PCRA court considered, Appellant's February 26, 2018, PCRA petition (which constitutes his third PCRA petition). However, inasmuch as this Court has held that "nothing bars a PCRA court from considering a subsequent petition, even if a prior petition is pending, so long as the prior petition is not under appellate review[,]" there is no procedural impediment to our review of Appellant's appeal from the dismissal of his February 26, 2018, PCRA petition. **Commonwealth v. Montgomery**, 181 A.3d 359, 364-65 (Pa.Super. 2018) (*en banc*) (holding PCRA courts are not jurisdictionally barred from considering serial PCRA petitions, provided that there is not a pending appeal of a PCRA petition).

statement, Appellant timely complied, and on November 30, 2018, the PCRA court filed a Pa.R.A.P. 1925(a) opinion.

Preliminarily, we must determine whether Appellant's instant PCRA petition was timely filed. ***See Commonwealth v. Hutchins***, 760 A.2d 50 (Pa.Super. 2000). In reviewing the propriety of the PCRA court's dismissal of Appellant's petition, we are limited to determining whether the PCRA court's findings are supported by the record, and whether the order is free of legal error. ***Commonwealth v. Allen***, 557 Pa. 135, 732 A.2d 582 (1999).

Pennsylvania law makes it clear that no court has jurisdiction to hear an untimely PCRA petition. ***Commonwealth v. Robinson***, 575 Pa. 500, 837 A.2d 1157 (2003). The PCRA provides that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

> (i)  the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution

- 18 -

or the law of this Commonwealth or the Constitution or law of the United States;

(ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). Moreover, "the PCRA limits the reach of the exceptions by providing that a petition invoking any of the exceptions must be filed within 60 days of the date the claim first could have been presented." *Commonwealth v. Walters*, 135 A.3d 589, 592 (Pa.Super. 2016) (citations omitted). *See* 42 Pa.C.S.A. § 9545(b)(2).[12]

In the case *sub judice*, Appellant was sentenced on July 9, 1984, and this Court affirmed his judgment of sentence on April 20, 1987. Our Supreme Court denied Appellant's petition for allowance of appeal on September 29,

_____

[12] As of December 24, 2018, Section 9545(b)(2) now allows that any PCRA petition invoking a timeliness exception must be filed within one year of the date the claim first could have been presented. *See* Act 2018, Oct. 24, P.L. 894, No. 146 § 2, effective in 60 days (December 24, 2018). This amendment does not apply to Appellant's case, which arose before the effective date of the amendment.

1987. Thereafter, Appellant did not file a petition for a writ of *certiorari* with the U.S. Supreme Court, and consequently, his judgment of sentence became final on or about November 29, 1987, upon expiration of the time to file a petition for writ of *certiorari* with the U.S. Supreme Court. **See** U.S.Sup.Ct.R. 20.1 (effective August 1, 1984; allowing 60 days to file petition for writ of *certiorari*).[13] Appellant filed his instant PCRA petition on February 26, 2018, which is patently untimely. **See** 42 Pa.C.S.A. § 9545(b)(1).

This does not end our inquiry, however, as Appellant contends that he is entitled to the governmental interference exception of Subsection 9545(b)(1)(i). The proper question with respect to Subsection 9545(b)(1)(i)'s timeliness exception is "whether the government interfered with Appellant's ability to present his claim and whether Appellant was duly diligent in seeking the facts on which his claims are based." **Commonwealth v. Edmiston**, 619 Pa. 549, 65 A.3d 339, 345 (2013) (citations omitted).

In the case *sub judice*, as indicated *supra*, Appellant relies on the District Attorney's Office's February 23, 2018, letter as the basis for his claim that he has met the governmental interference exception. Assuming, *arguendo*, Appellant has met the initial threshold of presenting his claim within 60 days of the date the claim first could have been presented, we conclude Appellant

---

[13] Effective January 1, 1990, the rule for filing a petition for writ of *certiorari* was renumbered and the time-period changed to ninety days under the current rule, U.S.Sup.Ct.R. 13.

has failed to demonstrate that he is entitled to the governmental interference exception.

Appellant asserts that he met the governmental interference exception as a result of the Commonwealth's failure to comply with the 1984 post-verdict agreement; *to wit*, he complains the Commonwealth did not "honor" the agreement when it opposed the claims raised by Appellant in his direct appeal, first PCRA petition, and federal *habeas corpus* petition. He contends the Commonwealth's opposition precluded him from appropriately litigating his claims, thus constituting governmental interference. He avers the governmental interference ended on February 23, 2018, when Assistant District Attorney Wellbrock filed the letter indicating the Commonwealth would no longer oppose the original post-verdict agreement, as well as agreeing with Appellant that he is entitled to PCRA relief.

Initially, we note this is not the first time Appellant has argued the Commonwealth breached the 1984 post-verdict agreement by contesting his entitlement to relief. Specifically, on direct appeal, Appellant contended that the Commonwealth should not contest his entitlement to a new trial on grounds of ineffective assistance of counsel since to do so would constitute a breach of the parties' post-trial agreement. *Chimenti*, 524 A.2d at 919 n.2. We found no merit to Appellant's argument and held:

> The Commonwealth did not, as [Appellant] contends, renege on its plea bargain negotiations, but rather zealously sought to uphold the plea in the Pennsylvania Supreme Court.

- 21 -

> That Court rejected the Commonwealth's argument, however, and ruled that the parties could not bargain away a valid jury verdict.

*Id.*

In any event, we hold that, since our Supreme Court specifically rejected the so-called plea agreement, and rendered it void, Appellant's allegations related to the Commonwealth's failure to abide by any term of the agreement are moot.

We reject Appellant's claim of governmental interference that the Commonwealth should have abided by an alleged agreement which was voided by the Supreme Court of Pennsylvania.

Furthermore, notwithstanding the fact the current District Attorney's Office "agrees" its predecessors breached the agreement, and thus Appellant is entitled to PCRA relief, we reject such an argument as it is beyond the power of the District Attorney. To adopt the position of the current District Attorney on the so-called plea agreement would allow the District Attorney to usurp the power of the judiciary, including that of our Supreme Court.

Therefore, as Appellant's third PCRA petition is facially untimely, and Appellant has not demonstrated that he is entitled to any of the timeliness exceptions, we affirm the PCRA court's order dismissing Appellant's third PCRA petition.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/19