J-S23005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KAREEM HOGAN | : | |
| | : | |
| Appellant | : | No. 601 EDA 2021 |

Appeal from the PCRA Order Entered February 25, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003016-2012

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 8, 2021**

Kareem Hogan appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   After careful review, we affirm.

A jury convicted Hogan on July 1, 2013, of several crimes, including third-degree murder, for his role in the October 27, 2011 shooting death of Joel Negron in Philadelphia.  This Court has previously adopted the trial court's recitation of the underlying facts in this case:

> On October 27, 2011, at approximately 6:30 p.m., in response to a radio call, police officer Antonio Smith, upon arrival at Waterloo and Westmoreland Streets in Philadelphia, saw [Negron] lying on the sidewalk of Westmoreland Street. [] Officer Smith examined [Negron's] injuries, noting multiple bullet wounds.  The officer did not observe a weapon on or about [Negron]'s body.   Within

---

[*] Retired Senior Judge assigned to the Superior Court.

minutes[,] an ambulance arrived and took [Negron] to [Temple University H]ospital.

At 7:17 p.m., [Negron] died at Temple University Hospital. D[octor] Edwin Lieberman, an Assistant Medical Examiner and [] expert in forensic pathology, concluded that [Negron] died of [two] gunshot wounds to his back and [one to his] torso. []

Police Officer Robert Flade of the Crime Scene Unit . . . recovered seven fired cartridge casings from the scene: five .25-caliber fired cartridge casings and two .40-caliber fired cartridge casings.

According to Police Officer Raymond Andrejczak, an expert in firearms identification, the five .25-caliber fired cartridge cases recovered from the scene were fired from the same firearm. The two .40-caliber fired cartridge casings were fired from a separate firearm. The two projectiles recovered from [Negron]'s body by the medical examiner's office were both .25-caliber and fired from the same firearm.

At trial, [several] witnesses in this case gave testimony that was inconsistent with the statements they [initially] gave to police.

On November 25, 2011, Johnny Walker gave a statement to police. Walker explained that he was walking in the area of Front and Westmoreland Streets when he heard yelling and saw [Hogan] and Brandon Sanabria. [Negron] and a friend were walking from Waterloo and Westmoreland Streets towards Hope Street. [Negron] said "there's that bitch ass nigga right there." [Hogan] responded "oh, he is pulling." [Hogan] and Sanabria pulled out their guns and started shooting at [Negron, who] said "that's all your bitch ass nigga got?" [Negron] walked to Waterloo and Westmoreland Street and then fell on the sidewalk. The day after the murder, Sanabria showed Walker a silver gun and asked if he wanted to buy it. Walker refused. Walker also told the police that he always saw [Hogan] carrying a black .40-caliber firearm on his hip.

At trial, Walker recanted, denying that [he] gave the answers in his statement. [Walker testified that he was actually home during the murder and that the only reason he signed the police statement was because he was held at the Homicide Unit and was told that if he signed it, he would be released. *See* N.T. Jury Trial, 6/25/13, at 158-90; *id.*, 6/26/13, at 122-25, 130-34.]

On November 26, 2011, Fredrick Miller, [Hogan's] stepfather, gave a statement to police. In the statement, Miller explained

that on the night of the murder, he was at home [on] Waterloo Street when he heard about seven gunshots. [Hogan] and Sanabria ran into the house and put guns on the floor. Miller told [Hogan] and Sanabria to leave and they did. Monte Hogan,[1] [] put the guns in a bag in the corner. About two hours later, Sanabria called and informed Monte Hogan that he was sending a woman to retrieve the guns. A woman [nam]ed Goida [then] arrived and took the guns to Sanabria's house.

The next day, [Hogan] came to Miller's house and told him that he had been walking with Sanabria on Westmoreland Street when he saw [Negron] walking with Edwin Laboy and Onehida Rodriguez. [Negron] told [Hogan], "there goes those bitch niggas from Waterloo." [Negron] was trying to reach for a weapon, so [Hogan] pulled out his .40-caliber and tried to shoot, but it jammed. Sanabria then pulled out his .25-caliber firearm and shot [Negron]. [Hogan] explained that the reason they were arguing with [Negron] was that Yaniz Estrada had a conflict with people from Mascher Street about selling PCP on Waterloo Street. [Hogan] and Sanabria didn't want Estrada selling PCP on the block because they sold PCP on Mascher Street.

At trial, although Miller confirmed that himself, [Negron], and Estrada sold PCP in the area of Waterloo and Westmoreland Streets, he denied that [Hogan] and Sanabria ran into hi[s] home with guns after the murder. Instead, he said that on the night of the murder[,] after he heard gunshots[, Miller] saw a group of people from Mascher and Mutter Streets yelling and running around. [Miller testified that detectives smacked him when they came to his home looking for Hogan and that he ultimately signed the police statement because he wanted to go home. *See* N.T. Jury Trial, 6/25/13, at 221-72.]

On November 26, 2011, Rafael Torres-Burgos gave a statement to police describing that on the night of the murder[,] he was walking down Westmoreland Street to pick up his girlfriend when he heard arguing and yelling. Torres-Burgos heard about three gunshots and saw [Hogan,] who was holding a gun[,] and Sanabria[,] running from Waterloo Street towards Howard and Hope Street.

---

[1] Monte Hogan is Hogan's brother and Miller's stepson. This Court will refer to Monte Hogan using his full name to avoid confusion with the appellant.

At trial, Torres-Burgos denied seeing [Hogan] and Sanabria shoot [Negron]. Torres-Burgos testified that he was in his home when he heard two or three gunshots. Torres-Burgos ran outside and saw [Negron] laying on the ground and two people he did not recognize running away. [Torres-Burgos admitted to circling and signing Hogan's photograph in a photo array, but stated that he only did so because he recognized Hogan from the neighborhood. ***See*** N.T. Jury Trial, 6/26/13, at 9-42.]

On November 27, 2011, Yaniz Estrada gave a statement to police. In the statement, Estrada explained that about two or three days before [Negron]'s murder[, Estrada] was on the 3300 block of Waterloo Street when she was approached by [Hogan] and Sanabria. [Hogan and Sanabria] asked Estrada if she was selling drugs and told her that she needed to stop selling [at that location]. Estrada told them she was not selling drugs and they walked away. On the day of the murder, at about 5:00 p.m., Estrada arrived on the 3300 block of Waterloo Street. While she was in the area[,] she [greeted Negron] and then went home.

At trial, Estrada confirmed that she was on the block on the day of the murder and had [greeted Negron]. Estrada denied that two days before the murder, [Hogan] and Sanabria had approached her. [Estrada] also denied selling drugs at the time of the murder. [Estrada recanted her police statement and alleged that the detectives harassed her and handcuffed her to a chair. ***See*** N.T. Jury Trial, 6/25/13, at 90-138, 141-42.]

On November 27, 2011, Edwin Laboy gave a statement to police. Laboy stated that[,] on the night of the murder when it was just starting to get dark, Laboy ran into [Negron] near Westmoreland and Waterloo Streets. As [Laboy] was talking to [Negron, Hogan] and Sanabria approached them. Laboy started to walk away and heard four or five gunshots. Laboy saw [Hogan] and Sanabria run away. Laboy explained that [Hogan] and his friends had been selling PCP on the block and wanted rent money from Estrada, who was working with Miller and [Negron].

At trial, Laboy confirmed that he had seen [Negron] near Westmoreland and Waterloo Streets shortly before [Negron] was murdered, but testified that he was on a different street when he heard about four or five gunshots. Laboy walked back to Westmoreland and Waterloo Streets and went to [Negron,] who was shot and dying on the street. Laboy explained that a few days before [Negron]'s murder, . . . there was an argument because

[Negron], Miller, and Estrada wanted to sell PCP on the block but [Hogan] did not want them to sell PCP without paying rent for it.

***Commonwealth v. Hogan***, 2723 EDA 2013 (Pa. Super. filed April 13, 2015)

(unpublished memorandum) (citing Trial Court Opinion, 10/29/13, at 2-6).

The PCRA court set forth the procedural history of this case as follows:

On January 6, 2012, [] Hogan[] was arrested and charged with murder and related offenses [in connection with the shooting death of Joel Negron]. On June 24, 2013, [Hogan] elected to be tried by a jury. On July 1, 2013, the jury convicted [Hogan] of third-degree murder, conspiracy, and carrying a firearm on a public street in Philadelphia[.] On August 27, 2013, th[e trial] court sentenced [Hogan] to [an aggregate term] of twenty-six to fifty-two years['] imprisonment.

[Hogan] appealed and on April 13, 2015, [this] Court affirmed his judgment of sentence. On September 15, 2015, the Supreme Court of Pennsylvania denied [Hogan's] petition for allowance of appeal.

On November 10, 2015, [Hogan] filed a timely *pro se* [PCRA] petition, his first. On March 2, 2017, th[e PCRA] court dismissed the petition. On November 28, 2017, th[is] Court affirmed th[e order of the PCRA] court[.] On December 12, 2017, [Hogan] filed a second counseled petition, which th[e PCRA] court dismissed on March 29, 2018. On April 20, 2018, [Hogan] filed a notice of appeal. On September 6, 2018, during the pendency of [the] appeal [of his second PCRA petition] before th[is] Court, [Hogan] filed a premature, subsequent *pro se* petition[,] his third overall. On September 17, 2018, th[e PCRA] court received notice of the subsequent petition, and on September 18, 2018, th[e] court issued a notice of intent to dismiss pursuant to Pa.R.A.P. 907. In the interim, on October 4, 2018, th[is] Court dismissed the appeal of [Hogan's] second PCRA for failure to file briefs. On October 25, 2018, th[e PCRA] court dismissed [Hogan's] third petition. On November 21, 2018, [Hogan] filed his fourth PCRA petition, which th[e PCRA] court dismissed on January 17, 2019.

On April 1, 2019, [Hogan] filed the instant PCRA petition, his fifth. On July 12, 2019, [Hogan] filed a motion for appointment of counsel. On August 12, 2019, th[e PCRA] court appointed PCRA counsel.[2] On September 7, 2020, after th[e PCRA c]ourt granted multiple continuances for defense investigation, [Hogan] filed an

amended petition. On December 14, 2020, the Commonwealth filed its response. On December 17, 2020, th[e PCRA] court continued the matter for [Hogan] to provide the Commonwealth with [signed certifications] in anticipation of an evidentiary hearing. On January 14, 2021, after [Hogan] was unable to secure [signed certifications], th[e PCRA] court issued a [Rule] 907 notice[, and Hogan] did not respond[.]

> [2] As a matter of policy, th[e PCRA] court generally appoints counsel on subsequent PCRA petitions where the petitioner raises allegations of misconduct by detectives who have been removed from the Philadelphia Police Department. However, th[e PCRA] court declined to appoint counsel on [Hogan's] third and fourth *pro se* petitions. Since the December 12, 2017 petition was pending on appeal at the time [Hogan] filed his September 6, 2018 petition, th[e PCRA] court was without jurisdiction to review the petition, rendering the appointment of any counsel frivolous. Similarly, th[e PCRA] court did not believe that appointment of counsel was warranted after receipt of the November 21, 2018 petition, as [Hogan's] claim was limited to the presentation of a newspaper article containing allegations of misconduct filed against Detective [Phillip] Nordo.[2] Because [Hogan] identified witnesses in his April 1, 2019 petition that could, in theory, provide testimony at an evidentiary hearing, th[e PCRA] court duly appointed counsel to help develop [Hogan's] claims.

PCRA Court Opinion, 2/25/21, at 1-2 (footnote and unnecessary capitalization omitted). The PCRA court dismissed Hogan's petition on February 25, 2021, two months after issuing the Rule 907 notice. Hogan and the PCRA court have complied with Pa.R.A.P. 1925.

---

[2] The Commonwealth agrees that Detective Nordo is currently charged with multiple counts of rape, sexual assault, and related charges allegedly committed in the course of his duties as a Philadelphia homicide detective. **See** Appellee's Brief, at 2. Indeed, each of the witnesses Nordo interviewed for Hogan's case recanted their prior statements at trial and accused the interviewing detectives of either making them say things that were false or having them sign a statement they did not make. **Id.** at 2-3.

On appeal, Hogan raises the following issue for our review: "Whether the PCRA court erred when it dismissed [Hogan]'s [PCRA] petition . . . without ordering an evidentiary hearing to determine if [Hogan]'s conviction was tainted by [Detective Nordo's] physical coercion of witnesses . . . to secure false testimony implicating [Hogan] as [one of Negron's] shooter[s]?" **See** Appellant's Brief, at 6.

The appellate standard of review for the denial of PCRA relief is well-settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level.

**Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012) (citations omitted).

As an initial matter, we must address this Court's jurisdiction to hear Hogan's instant PCRA petition. **See Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013). ("[The PCRA's] time requirement is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition."). Generally, a petition for relief under the PCRA must be filed within one year of the date the judgment of sentence becomes final, unless the petitioner alleges, and proves, an exception to the time for filing the petition, as set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii). A PCRA petition invoking one of these statutory exceptions to the jurisdictional

time-bar must be filed within sixty days from the date the petitioner's claim arises. *See* 42 Pa.C.S.A. § 9545(b)(2).[3] Under the PCRA, a judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). "When a PCRA [petition] is not filed within one year of the expiration of direct review, or not eligible for one of the exceptions, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims." *Commonwealth v. Shiloh*, 170 A.3d 553, 557 (Pa. Super. 2017).

First, we note that Hogan's instant PCRA petition, his fifth, is patently untimely since it was filed several years after his judgment of sentence became final. *See* 42 Pa.C.S.A. § 9545(b)(1). Because his petition is untimely, Hogan must invoke an exception to the jurisdictional time-bar. *See Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000) (PCRA time limit is jurisdictional; court may only review untimely petition if statutory exception applies). Hogan relies on the newly-discovered fact exception, *see* 42

_____

[3] On October 24, 2018, the General Assembly amended subsection 9545(b)(2) to enlarge the time in which a petitioner may invoke a PCRA time-bar exception from 60 days to one year from the date the claim arises. *See* Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018]. However, the amendment applies only to claims arising on December 24, 2017, or thereafter. *Id.* at § 3. Here, Hogan raises a due process challenge based on Detective Nordo's alleged misconduct during the investigation of Hogan's criminal case. Since Hogan was made aware of the alleged misconduct at trial, in 2013, the 60-day deadline applies.

Pa.C.S.A. § 9545(b)(1)(ii), and the governmental interference exception to invoke the PCRA court's authority to exercise jurisdiction. *Id.* at § 9545(b)(1)(i). In his appellate brief, Hogan explains that, upon reading a news article that reported on newly-filed criminal charges that were lodged against Detective Nordo, alleging police misconduct during his investigation into a number of criminal cases, Hogan filed a motion for discovery in his own case. Subsequently, due to the nature of the criminal charges filed against Detective Nordo and his involvement in Hogan's case, the Commonwealth voluntarily turned over its case file to Hogan on December 18, 2019 and December 20, 2019. Hogan then hired a private investigator to locate witnesses in his own case who had had contact with Detective Nordo. Hogan concedes that he was unsuccessful in securing the necessary signed certifications from the witnesses who Detective Nordo interviewed[4] in order for the court to conduct Hogan's requested evidentiary hearing. *See* 42 Pa.C.S.A. § 9545(d)(1). Nevertheless, Hogan suggests that "exceptional circumstances" are present in this case such that the court should be required

_____

[4] Hogan's private investigator searched for Walker, Miller, Torres-Burgos, Estrada, and Laboy, since all had been interviewed by Nordo. The investigator did not locate Walker. *See* Appellant's Brief, at 23. Hogan's investigator located Miller, who stated that Detective Nordo had hit him. *Id.* at 24. The investigator also located Torres-Burgos, who stated that he did not recognize Detective Nordo, but that his police interviewer for Hogan's case used force but did not hit him. *Id.* at 23-24. The investigator also spoke with Estrada over the telephone, and she stated that Detective Nordo had utilized physical force when interviewing her; however, Estrada mentioned that she didn't want to cooperate with Hogan. *Id.* at 23. Finally, the investigator discovered that Edwin Laboy is deceased. *Id.* at 24.

to issue subpoenas to the affected trial witnesses so that the court may hold an evidentiary hearing on Hogan's claims of police coercion. *See* Appellant's Brief, at 22, 26-27. Hogan additionally relies on the statutory definition of after-discovered evidence to establish his eligibility for relief under the PCRA.[5] *See* 42 Pa.C.S.A. § 9543(a)(2)(vi). After our review of the record, we conclude that Hogan is not entitled to an evidentiary hearing since he has not successfully pleaded an exception to the jurisdictional time-bar.

In order to overcome the PCRA's jurisdictional hurdle, under the newly-discovered facts exception, *see* 42 Pa.C.S.A. § 9545(b)(1)(ii), the petitioner "must establish that: (1) the **facts** upon which the claim was predicated were **unknown**[;] and (2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under [section 9545(b)(1)(ii)]." *Commonwealth v. Brown*, 111 A.3d 171, 177 (Pa. Super. 2015) (citing *Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007)) (emphasis in original). Due diligence requires a petitioner to take reasonable efforts to uncover facts that may support a claim for collateral relief. *Commonwealth v. Burton*, 121 A.3d 1063, 1071 (Pa. Super. 2015) (en banc). A petitioner must explain why he could not have learned the new

_____

[5] For clarity, we note that newly-discovered facts, *see* 42 Pa.C.S.A. § 9545(b)(1)(ii), and after-discovered evidence, *see* 42 Pa.C.S.A. § 9543(a)(2)(vi), are separate and distinct. *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017); *see also Commonwealth v. Cox*, 146 A.3d 221, 227-30 (Pa. 2016) (appellant must invoke PCRA court's jurisdiction prior to review of eligibility for relief under subsection 9543(a)(2)(vi)).

fact(s) earlier by exercising due diligence. ***Commonwealth v. Breakiron***, 781 A.2d 94, 98 (Pa. 2001). Our Supreme Court has clarified that "the newly-discovered facts exception is not focused on new[ly] discovered or newly willing sources for 'facts' that were already known." ***Commonwealth v. Marshall***, 947 A.2d 714, 721-22 (Pa. 2008) (emphasis omitted).

Here, Hogan characterizes the Commonwealth's disclosure to him regarding the charges filed against Detective Nordo for his alleged misconduct in other cases as the "new fact" satisfying the exception to the time-bar for his instant PCRA petition. Nevertheless, each of the witnesses that Hogan identifies as having been unduly coerced by Detective Nordo already testified at Hogan's trial, in 2013, regarding his or her statements to police and the investigation tactics police used when procuring those statements. Hogan cannot explain why he could not have known of the fact of Detective Nordo's misconduct as early as 2013, given the witnesses' trial testimony. ***See Brown***, ***supra***. Indeed, Hogan could have learned of the now-complained-of misconduct, at that time, by the exercise of due diligence. ***See Burton***, ***supra***; ***Breakiron***, ***supra***. We conclude that each of Hogan's proposed witnesses at the evidentiary hearing would be a newly-willing[6] source for the previously known fact of Detective Nordo's alleged misconduct during his investigation of Hogan's case. ***See Marshall***, ***supra***.

---

[6] We recognize that Hogan's proposed witnesses are, in fact, **the same sources**, and would, indeed, be newly willing if permitted to testify on the subject.

Additionally, regarding the governmental interference exception, 42 Pa.C.S.A. § 9545(b)(1)(i), Detective Nordo's alleged misconduct, even if proved, would not trigger the exception since Detective Nordo's allegedly assaultive and coercive acts would have occurred during pre-trial investigation, or at trial, and would not have interfered with Hogan's presentation of his current claim at that proceeding. ***Id.***; ***see also Commonwealth v. Chimenti***, 218 A.3d 963, 975 (Pa. Super. 2019) ("The proper question with respect to [s]ection 9545(b)(1)(i)'s timeliness exception is whether the government interfered with Appellant's ability to present his claim and whether Appellant was duly diligent in seeking the facts on which his claims are based.") (citation and quotation marks omitted). Indeed, Hogan's proposed witnesses **already testified, at trial, regarding Detective Nordo's alleged misconduct** and Hogan was not interfered with or prevented from raising that claim at that time. ***See Chimenti***, ***supra***.

Since Hogan has failed to plead and prove any exception to the PCRA's time bar, we find that the PCRA court's dismissal of his petition is supported by the record. ***See Shiloh***, ***supra***; ***see also Koehler***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2021